232 P.2d 130

**Appeal of MacKENZIE AUTO EQUIP-
MENT CO.**

**No. 7636.**

Supreme Court of Idaho.

May 22, 1951.

Rehearing Denied June 18, 1951.

O. R. Baum, Pocatello, for appellant
MacKenzie Auto Equip. Co.

Robert E. Smylie, Atty. Gen., John W.
Gunn, Asst. Atty. Gen., for respondent.

**KEETON, Justice.**

This action involves a controversy between the Employment Security Fund, or Agency, provided for under the Employment Security Law, 1947 S.L. c. 269, page 793, and appellant MacKenzie Auto Equipment Co., as to the rate of contribution or tax appellant should be required to pay to the Fund on its payroll to employees, subsequent to January 2, 1945.

The facts are: F. E. MacKenzie, as an individual, over a period of years, was an employer operating auto equipment stores in Southern Idaho. One of these stores or employing units was located in Pocatello, and one in Idaho Falls. The Pocatello store commenced business in 1922, and the Idaho Falls store was opened for business in 1938. Both stores were conducted under trade names, and MacKenzie's individual ownership. On January 2, 1945, MacKenzie, for reasons of his own, incorporated the Idaho Falls store, and approximately 94% of the stock of the corporation was issued to him. One share was issued to E. R. Kearsley, secretary, and one to W. B. Collings, who had formerly managed the Idaho Falls store, and continued to manage the store as now incorporated, as gift shares. Ten shares were sold to E. R. Kearsley, secretary. There was no change in management, personnel of employment, type of business, or location. The employment, except for form, was the same subsequent to incorporation as before.

Prior to January 2, 1945, the employees of these stores were reported to the Employment Security Fund, or its Director, or predecessors, through the combined account of the two stores. Each of the stores, however, was operated as a separate entity, and one report was made for both businesses to the Employment Security Fund, or its predecessors, under one account number. The employees of each store were not interchanged.

Prior to the incorporation of the Idaho Falls Store, the two stores had been awarded an experience rating, and instead of paying the maximum of 2.7% on the payroll of employees, the rate had been reduced because of favorable experience to 1.5% covering the payroll for both stores.

The Fund contends that when the Idaho Falls store was incorporated, the corporation became a new business, and that the experience, favorable rating could not be

transferred to the corporation and that the corporation had to start anew and pay the maximum rate of 2.7% until such time had elapsed as to entitle it to a reduced rate because of favorable business experience.

The position of the Fund is stated as follows: "A corporation must be considered a separate entity from personal ownership. * * * The law in effect at that time [January, 1945] did not provide for the transfer of rate from one employing enterprise to another, even though there was little change in the ownership of the business. The Idaho Falls store which was incorporated and had a new legal identity was set up as a new employer."

Subsequent to the incorporation of the Idaho Falls store, the Pocatello store was likewise incorporated and permitted to retain the experience rating formerly established for the Idaho Falls store and the Pocatello store, and the experience rating of 1.5% allowed the Pocatello store was continued by the Fund.

From a ruling of the Fund fixing the rate of contribution tax at 2.7% for the Idaho Falls store, the appellant appealed to the Industrial Accident Board. The Board affirmed the ruling.

It will be noted that the increase in the rate of tax on the Idaho Falls store was not due to any rerating because of claims made against the Fund, or other hazard warranting an increase in rate, but was due solely to the fact that the business at Idaho Falls was now carried on as a cor-poration as distinguished from an individual. Hence a new employer's number was issued to the corporation, and the rate established as though the Idaho Falls store were an entirely new business.

The question therefore to be determined is whether the tax payable by the Idaho Falls store subsequent to January 2, 1945 should be figured on payroll on an experience rating of 1.5% or the maximum rate of 2.7%. Sec. 51, 1947 S.L. page 820.

The original unemployment compensation law as passed by the 3rd Extraordinary Session of the 1935 Legislature was approved August 6, 1936. Sec. 19, c. 12, page 42 of the Act defined an employing unit as: " * * * any individual or type of organization, * * * which has or subsequent to September 1, 1936, had in its employ one or more individuals performing services for it within this state. * * * any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a *single* employing unit for all the purposes * * *." (Emphasis supplied.)

This section was amended and the Act supplemented in the 1937 S.L. c. 187, page 315, in which an employing unit is defined as: "any individual or type of organization, * * * which has or subsequent to September 1, 1936, had in its employ one or more individuals performing services for it within this state * * *", and an employer is defined as: "Any employing unit which for some portion of a day in each

of twenty different weeks within the current or the preceding calendar year * * * has or had in employment, one or more individuals * * *".

This act was further supplemented and amended in the twenty-eighth regular session of the legislature, 1945 S.L. c. 203, at page 365, which defined an employer as follows: "The term 'employer' where used in this Act, shall * * * have the meaning ascribed to it in this section, * * *", and "(a) * * * shall include any person who has, or subsequent to December 31, 1936, had in his employ one or more individuals performing services for him within this State." "(b) All individuals performing services within this State for an employer who maintains two or more separate establishments within this State shall be deemed to be employed by a *single* employer for all the purposes of this Act." (Emphasis supplied.)

The 1945 Act, 1945 S.L. page 365, Sec. 43-2507, provides as follows:

"(a) The successor in interest of a covered employer, with respect to the trade, profession or business of such covered employer, shall be liable for the payment of all contributions due from said covered employer and unpaid at the time that such successor in interest enters into possession: provided, that if such successor in interest shall, prior to the time that he enters into possession, obtain from the Board a statement of such unpaid contributions of his predecessor in interest, his liability shall be limited to the amount shown in said statement.

"(b) Any employer who acquired his organization, trade, or business or substantially all of the assets thereof, from another who, at the time of such acquisition, was an employer subject to this Act, shall, by such acquisition, become a covered employer under this Act."

An Act covering the subject matter discussed was re-enacted by the twenty-ninth session of the legislature in 1947, 1947 S.L. ch. 269, page 793.

In 1943, the Board, in regulations permitted by the employment compensation law then in effect, promulgated two rules, among others, pertinent here. Rule #503 as follows: "Benefit Charges to Employer Accounts. For experience rating purposes, benefits paid for unemployment shall be charged to the account of the last employer in the base period, as shown by the determination issued to the benefit claimant." and Rule #504 as follows: "Experience Rating Account. A separate experience rating account shall be maintained for each employer, and there shall be credited to the account all contributions which he has paid on his own behalf and his account shall be charged with benefits paid and chargeable to his account in accordance with Regulation 503. Nothing in this Regulation shall be construed to grant any employer or individual in his service prior claims or rights to the amounts paid by him into the

fund either on his own behalf or on behalf of such individuals."

Prior to 1947, there was no "successor in interest" of an employer selling or transferring the business to a stranger to the business. In the 1947 S.L. Ch. 269, Sec. 51(d), page 821, the rights and liabilities of a successor in interest are defined as follows: "(3) the successor assumes responsibility for all contributions and penalties required from the predecessor. Effective as of the date of such change in legal identity or form, the payroll and experience rating records of the predecessor shall for the purposes of rate determination be transferred to the successor. The successor's contribution rate from such date to the end of the current year shall be a newly computed rate determined in accordance with the provisions of this section and based upon the combined experience rating records of the predecessor and successor as of the regular computation date for the year in which such change was effected."

We must determine the question submitted by the law in effect when the transfer in the instant case was made. (January 2, 1945)

The question is one of first impression here, and there are but few decisions from other jurisdictions throwing light on the matter. Statutes from other states covering the subject matter are not in all cases worded identically with the Idaho statute, and decisions are not always in point.

That the transfer of favorable rating cannot be made to a successor was held in the following cases: State of Texas v. Dallas Warehouse No. 4 et al., 147 Tex. 495, 217 S.W.2d 654; Texas Unemployment Compensation Commission v. General Engineering Corporation, 147 Tex. 503, 217 S.W.2d 659; Ned's Auto Supply Co. v. Michigan Compensation Commission, 313 Mich. 66, 20 N.W.2d 813; El Queeno Distributing Co. v. Christgau, 221 Minn. 197, 21 N.W.2d 601; Florida Industrial Commission v. Schwob Co., 153 Fla. 356, 14 So. 2d 666; Schwob Mfg. Co. v. Huiet, 69 Ga. App. 285, 25 S.E.2d 149; White v. State, Tex.Civ.App., 197 S.W.2d 389.

Cases expressing a contrary view are: Royal Jewelers Co. of Knoxville v. Hake, 185 Tenn. 254, 205 S.W.2d 963; Packard Clothes, Inc., v. Director of Division Employment Sec., 318 Mass. 329, 61 N.E.2d 528; See also, Meyer v. Michigan Unemployment Commission, 311 Mich. 440, 18 N.W.2d 886, 159 A.L.R. 1195.

If the favorable contributory rate of 1.5% on payroll of employees is not to be continued subsequent to incorporation and the maximum rate of 2.7% on payroll is to be assessed against the Idaho Falls store (appellant), the justification of such maximum rate can only be upheld because of two factors: first, the corporation must be considered a new business; and, second, the corporation as such was allotted a new employer's number account by the Fund. It cannot be justified on the basis that the

increase of rate was due to any claims against the Fund, or other hazard, which would warrant an increase of rate for a period of time exceeding three or more years.

Was the employing unit (Idaho Falls store after incorporation) within the meaning of the law, the same employer or the same employing unit in existence prior to January 2, 1945? Theoretically the employer was not the same. Actually, the business continued the same as it had existed subsequent to 1938. The location, personnel, control, management, and the type of business were the same.

Should there have been any unpaid contribution to the Fund, the corporation, as successor to the individual, would have been required to pay all unpaid taxes assessed against the predecessor's payroll. 1943 S.L. c. 68, page 145, § 7-7, subsections (a) and (b).

By this legislative act, the successor also became a covered employer and a new employer's number, for purposes of records, bookkeeping and rating, would have to be assigned to a successor.

A successor is defined as one who succeeds to the rights or place of another, i. e. one who takes the place of a predecessor or preceding thing.

The successor (the corporation) was not starting a new business, nor was it hiring new personnel, or changing locations. It was the same business, at the old stand, with the same management and experienced owner.

The successor (the corporation) while changed in form of legal entity, was not new in the field of management.

The merit rating should not be based on some technical form even though the corporation is in law a new owner. The continuity of merit rating does not depend on the formal corporation entity, but upon the substantial continuity of the type of business, personnel, management and experience formerly established.

The sole effect of the incorporation of the Idaho Falls store was to change the form of the business enterprise. There was no substantial change in the proprietary interest. The employees' conditions have undergone no change whatsoever.

An objection that is made to the continuing of the experience rate of tax at 1.5% is that the corporation is a legal, separate entity.

In the case of Packard Clothes, Inc., v. Director of Division Employment Sec., 318 Mass. 329, 61 N.E.2d 528, 531, an individual was the sole owner of the business and received a merit rating of 1%. He incorporated the business and became substantially the sole stockholder. The rate of contribution was raised by the director from 1% to 2.7%. In fixing the rating at 1% the court said: "Concededly the plaintiff was in law a separate entity, * * * it is difficult to conceive of a more complete factual succession than that by the plaintiff to the individual businesses

368

\* \* \*. It is competent to pierce the veil of the corporation and to disregard the corporate form, and to consider substance rather than form in order to carry out the legislative intent."

In Texas Co. v. Florida Industrial Commission, 155 Fla. 536, 20 So.2d 680, the corporation owned all the stock of a subsidiary company. A merger resulted, and the parent company acquired all the assets of the subsidiary. The court held that the parent company was entitled to the merit rating which its subsidiaries had held. See also Meyer v. Michigan Unemployment Commission, 311 Mich. 440, 18 N.W.2d 886, 159 A.L.R. 1195.

We therefore conclude that where there is no change in management, supervision, operation, location, and where, in fact, there is no change in ownership, except one of form, the favorable rating formerly enjoyed by the Idaho Falls store should be accorded the corporation until changed by other factors not shown in the factual situation involved here.

The reward for experience and able management should be accorded the Idaho Falls store the same as was accorded the Pocatello store.

We are not unmindful of the fact that the Board had substantial, well reasoned authority for its conclusion. The order appealed from is therefore reversed. Costs to appellant.

GIVENS, C. J., and PORTER, TAYLOR and THOMAS, JJ., concur.