36244. WILLIAMS, Commissioner, for use, etc. *v.*
MAR-LEE BUILDERS, INC.

36245. WILLIAMS, Commissioner, for use, etc. *v.*
TRACY BUILDERS, INC.

DECIDED JULY 16, 1956.

*Otis L. Hathcock,* for plaintiff in error.

*Stanley P. Meyerson,* contra.

TOWNSEND, J. 1. The affidavit of illegality recited that the execution was proceeding illegally for the following reasons: "(a) For the reason that the same seeks to impose contributions upon the corporation for the year 1954 under the Unemployment Compensation Law whereas, in fact, the corporation was not subject to said law in that it did not employ 8 or more workers in 20 different weeks during the year 1954, and (b) upon the further grounds that the State of Georgia is seeking to impose said contributions illegally and unconstitutionally upon the said corporation by seeking to combine employees of another corporation, and of an individual proprietorship, claiming to act under Title 54, Sec. 657 (g) (2) and (3) of the Georgia Code Annotated, and that such construction of these sections and actions thereon are in violation of the Constitution of Georgia, Sec. 2-102 of the Georgia Code Annotated and of the United States Constitution, Sec. 1-815 as printed in the Georgia Code Annotated." The plaintiff in execution demurred on the ground that no issuable defense was set up; that no facts are set up to show in what manner the provisions of the Employment Security Law are unconstitutional and no facts stated on which to base such conclusion. The defendants then amended by alleging the following: "Defendant in fi. fa. shows that it did not acquire the organization, trade or business or substantially all of the assets of another corporation or another individual proprietorship, as is contended by the plaintiff in fi. fa. and accordingly the attempt by the plaintiff in fi. fa. to combine its employees with that of another corporation or with that of an individual proprietorship is illegal and unconstitutional as hereinabove stated." The amendment was objected to on the grounds that the original illegality did not contain enough to amend by and that the amendment attempts to set forth a new and independent ground of defense and is inadmissible for the reason that it does not comply with Code § 39-1005 as follows: "Affidavits of illegality are, upon motion and leave of the court,

amendable instanter by the insertion of new and independent grounds: Provided, the defendant shall swear that he did not know of such grounds when the original affidavit was filed." A second amendment was filed which merely quoted the provisions of the State and Federal Constitutions referred to in the original affidavit, and demurrers were renewed to the pleading as finally amended.

(a) "An amendment [to an affidavit of illegality] which does not add a new and independent ground of illegality, but which merely amplifies or amends a ground in the original affidavit, need not be sworn to." *Mayor &c. of Savannah* v. *Wade*, 148 *Ga.* 766 (1) (98 S. E. 464). In *Cooper Co.* v. *Lanier*, 17 *Ga. App.* 688 (87 S. E. 1092) it was held that where an affidavit of illegality alleged that the defendant in execution had never been served with process it was not a new and independent ground of illegality to add by amendment that her signature on an acknowledgment of service was obtained while she was in an irrational state. In *McCook* v. *Laughlin*, 9 *Ga. App.* 550 (1) (71 S. E. 917), it was held that an amendment to an affidavit of illegality, which latter set out that the debt evidenced by a mortgage had been paid, was allowable and did not add a new ground where it set out the manner of payment. By parity of reasoning, where the original affidavit of illegality sets out that the defendant is not subject to the law in that it did not employ the required number of workers for the requisite number of weeks in a calendar year and further contends that the plaintiff in fi. fa. is proceeding in an unconstitu-- tional manner, this is amendable by alleging in greater detail that the defendant is not chargeable with the necessary number of employees because it did not acquire the business or substantially all the assets of another. The effect of acquiring the business of another is merely to tack on to the number of computable employee-weeks of the employing unit the employee-weeks of its predecessor, which would result for the purposes of the act in charging each defendant with a sufficient number of employee-weeks to bring it within the terms of the act.

(b) Granting that the affidavit of illegality was not sufficient, under the decision in *Flynn* v. *State*, 209 *Ga.* 519 (74 S. E. 2d 461) and similar cases to raise a constitutional question, it nevertheless constituted a statement on the part of each defendant that

it did not have sufficient employees over sufficient period of time to become an employer within the terms of the act. The original pleading was accordingly not a mere plea of general issue (as in *Gosa* v. *Clark & Sons*, 43 *Ga. App.* 310, 158 S. E. 608, and *McLendon* v. *Lemon*, 79 *Ga. App.* 751, 54 S. E. 2d 437) which would not have constituted enough to amend by. Neither did the amendments contain new and independent grounds of illegality, but they were rather an amplification of grounds already pleaded, for which reason the objections to the amendments were properly overruled. The affidavit as amended was sufficient to present an issue of fact, and the demurrers thereto were properly overruled.

■ The sole remaining question is whether the defendants in fi. fa. came within the provisions of Code (Ann. Supp.) § 54-657 (g) 2 or 3 defining an employer as any employing unit "which acquired the organization, trade or business, or substantially all the assets thereof, of another which, at the time of such acquisition, was an employer subject to this Chapter" or "which acquired the organization, trade or business, or substantially all the assets thereof, of another employing unit if the employment record of such individual or employing unit subsequent to such acquisition together with the employment record of the acquired unit prior to such acquisition, both within the same calendar year, would be sufficient to constitute an employing unit an employer subject to this Chapter under paragraph 1 of this subsection."

The undisputed evidence briefly is: that an individual, Richard Doetsch trading as Dick Doetsch Company, owned land which he desired to subdivide, and that during the entire calendar year of 1953 he subdivided the tract into 185 lots, built houses on some lots and sold them; that he employed 8 or more persons for 20 or more weeks and was an employer within the terms of Code § 54-657(g)1. The same situation continued from January 1 through March, 1954, during which 3-month period Doetsch built 20 houses for sale. In the meantime, he and another person became the sole stockholders of a corporation, the defendant Mar-Lee Builders, Inc., and he and two other persons became the sole stockholders of the other defendant corporation, Tracy Builders, Inc., of which latter Doetsch was president. Mar-Lee Builders, Inc., began operations about April 1, 1954; purchased lots from Doetsch in return for shares of stock and built 15

houses in April and May. Tracy Builders, Inc., purchased lots from Doetsch in return for shares of stock and built a group of houses on them between June 14 and July 15. Between July 23 and September 19, Mar-Lee Builders, Inc., built a second group of houses. Between September 17 and November 24 Tracy Builders, Inc., built a second group of houses. During the month of December, Doetsch commenced building his second group of houses for the year. Except for ordinary turnover, the group of builders employed by the three employing units was the same, and, except for the months when houses were being built, no employing unit had as many as 8 employees for any week of such period. No single employing unit had 8 or more employees working within any week of the calendar year in excess of 17 or 18 weeks. Doetsch sold a total of 18 lots to Mar-Lee Builders, Inc., out of his group of 185 lots, and sold a total of 25 lots to Tracy Builders, Inc. Most of the building done by the defendants was on lots purchased from Doetsch. The three concerns had the same office address during the year but kept separate books and records. Each purchased its own material, financed its own undertakings, and on the few occasions when one purchased from another the accounts were billed in the same manner as other accounts of the firm. Doetsch purchased and serviced second mortgages of each corporation uninterruptedly during the year, of a total value of approximately $85,000, continued his operation of laying out streets and curbs throughout the subdivision (of which he retained 142 lots), and held about $100,000 of business assets in addition thereto. Substantially no property or assets were exchanged between the three concerns except for the lots which each purchased from Doetsch for its own use.

Recognizing that the Employment Security Law (Code, Ann. Supp., Chapter 54-6; Ga. L. 1937, p. 806 et seq., as amended) is to be liberally construed in favor of the State (Code, Ann. Supp., § 54-602; *Young* v. *Bureau of Unemployment Compensation*, 63 *Ga. App.* 130, 10 S. E. 2d 412) nevertheless, in deciding the question of tax liability the court must look to facts and not to motives, for, as stated in *Brewster* v. *Huiet*, 69 *Ga. App.* 593, 601 (26 S. E. 2d 198) : "It is of course possible, permissible and legal for the defendants to have made such an agreement with the truck drivers as would have relieved the defendants from the payment

of the tax, even if the purpose of the agreement was to escape the tax." No attack is made upon the corporations here as separate entities, and it would be possible, permissible and legal for each to purchase lots and build houses in the same subdivision, even with the same labor, without becoming liable under the tacking provisions, provided neither "acquired the organization, trade or business or substantially all of the assets" of the other. There is no contention that any one succeeded to substantially all the assets of another, but it is contended that all were in the same business, that they succeeded to the same labor force, and that this constituted "acquiring the business" of the other. Recognizing that business means activity, occupation, or that which occupies the attention and labor of men for the purpose of a livelihood or profit (*Novak* v. *Redwine*, 89 *Ga. App.* 755, 81 S. E. 2d 222), and is general in meaning, nevertheless "acquiring the business" of another is a term of more definite scope. To acquire is "to get as one's own" (Webster's New International Dictionary). Although the 3 concerns involved here were all engaged in the building of homes for sale, no one of them acquired or got as its own any group of lots or houses as to which either of the other concerns was engaged in building houses for sale. Nor does it appear that any of them got as its own the customers or "trade" of the other. The only element in common is the labor group, and it of itself does not make the business. That the businesses are related and have common elements of ownership does not constitute the employing units as one employer. That portion of the act (Code, Ann. Supp., § 54-657 (g) 4) which classified an employer as "any employing unit which, together with one or more employing units, engaged in related business, is owned or controlled directly or indirectly by the same interests" when the sum of the two would come within the provisions of the act, was declared unconstitutional (*Royal Cigar Co.* v. *Huiet*, 195 *Ga.* 852, 25 S. E. 2d 810) as a denial of equal protection and an unjustifiable attempt to pierce the corporate entity. See also *Independent Gasoline Co.* v. *Bureau of Unemployment Compensation*, 190 *Ga.* 613 (10 S. E. 2d 58). The same effect must be given to the corporate existence of the defendants here. Eliminating the fact that each corporation purchased lots from Doetsch for the purpose of building and selling houses, and the fact that Doetsch was an

active or controlling stockholder in each (as must be done under the Supreme Court decisions just cited) there exists a situation in which one business, without acquiring the business or assets of another, hired a labor force which was substantially the same as the labor force previously used by a similar business. If a group of laborers of any type divided their time between like businesses, none of which had occasion to employ them for as many as 20 weeks of any calendar year, this would not be a reason under the act for tacking on the employment records of the separate employing units.

The plaintiff in error relies strongly on *Union Dry Goods Co.* v. *Cook*, 71 *Ga. App.* 708 (32 S. E. 2d 190) in which it was held that under the provisions of Code § 54-657 (f) a department store which leased out certain departments must be considered an employing unit as to employees of the lessee because "the whole evidence shows that the leased departments are but units of the whole." That part of the Code section there construed which included in the definition of "employing unit" a provision for tacking on the employees of employees of the employing unit's contractors or subcontractors was repealed by the General Assembly subsequent to the determination of that case. See Ga. L. 1951, pp. 512, 514, § 7. Thus recently, both by legislative action and judicial construction, there has been a trend veering away from tacking on employees of one employing unit with those of another unless agency is established or the employer acquires and succeeds to the trade, business, occupation or substantially all the assets of its predecessor. Such was the case in *Phillips* v. *J. L. Peed Co.*, 78 *Ga. App.* 471 (51 S. E. 2d 468), also cited by the plaintiff in error, where the owner of a business took in a partner, and the partnership succeeded to the business of the individual.

Since neither of the defendants here comes within the provisions of the Employment Security Act, and since they cannot be considered for the purpose of taxation as a single employing unit during the year, it was proper to sustain the affidavit of illegality. The 8 special grounds of the amended motion for a new trial are but amplifications of the general grounds, and the points therein raised have been dealt with in this division of the opinion, except, perhaps as to special ground 7, which contends that the defend-

ants and Doetsch pursued a plan or scheme to evade or avoid the payment of contributions. Whether or not this is true, no fraud has been shown so as to justify a court in piercing the corporate entities of these defendants. As shown above, it is permissible to proceed by any legal means to plan business activities so as to obtain the most advantageous tax structure possible and this is, in fact, one of the commonest services rendered by attorneys to business firms at the present time.

The trial court did not err in overruling the demurrers and objections to the pleadings, nor in denying the motions for a new trial as amended.

*Judgment affirmed in both cases. Gardner, P. J., and Carlisle, J., concur.*