303 P.2d 672

**W. J. O'BRYANT, Plaintiff-Appellant,**

**v.**

**The CITY OF IDAHO FALLS, Idaho, a municipal corporation, and its duly elected Mayor and Councilmen, namely Russell Freeman, George Petersen, Donald Foote, Vernon Johnson and John Rogers, Mayor,**

**and**

**Idaho Falls Cooperative Gas Association, Inc., a corporation, and its Board of Directors, namely, D. A. Thompson, D. F. Richards, Lynn Crandall, George Watkins and Hugh Benfer, Defendants-Respondents.**

No. 8501.

Supreme Court of Idaho.

Oct. 24, 1956.

Rehearing Denied Dec. 4, 1956.

O. R. Baum, Pocatello, for appellant.

A. L. Smith, Idaho Falls, Ben Peterson, Pocatello, and Oscar W. Worthwine, Boise, for respondents.

Claude V. Marcus and J. N. Leggat, Boise, and Harold L. Ryan, Weiser, amici curiae.

PORTER, Justice.

Appellant brought this action for declaratory judgment for the purpose of testing the validity of the ordinance of the City of Idaho Falls granting an exclusive franchise for a period of thirty years to respondent, Idaho Falls Cooperative Gas Association, Inc., hereinafter referred to as the "Cooperative", to construct, maintain and operate a system for the distribution of gas to the residents of Idaho Falls and immediate vicinity. Appellant prayed for a judgment declaring such ordinance to be illegal and void. Trial of the cause was had before the court sitting without a jury, and resulted in a judgment in favor of respondents holding such ordinance to be legal and valid. From such judgment this appeal has been perfected.

The Intermountain Gas Company, a corporation, holds a certificate of convenience and necessity granted by the Public Utilities

Commission for the distribution of natural gas in southern Idaho including the territory of Idaho Falls and vicinity. Such company made application to the City of Idaho Falls for a franchise to use the streets and alleys of such city for the construction and operation of a system for the distribution of natural gas. This application has been by-passed and not acted upon. The Intermountain Gas Company having an interest in the outcome of this litigation, its attorney, Mr. Claude Marcus, was permitted to appear in such cause in this court as amicus curiae. It also being made to appear that a suit similar to this action is now pending against the City of Weiser to determine the effect of a similar ordinance granting a franchise to a similar cooperative association, the attorneys for the plaintiffs in such suit, Messrs. J. N. Leggat and Harold L. Ryan, were permitted to appear as amici curiae.

Many attacks are made upon the validity of the franchise granted to the Cooperative, and many questions raised and discussed by appellant and amici curiae. These attacks fall generally into two groups. The first group of attacks is against the Cooperative. It is contended: That a cooperative cannot be organized for the distribution of gas under the provisions of Title 30, Chapter 10, I.C. That the Cooperative is a public utility subject to regulation by the Public Utilities Commission and is not a non-profit cooperative association exempted from the jurisdiction of the Commission by the pro-

vision of Section 61–104, I.C. That the Cooperative is not authorized to issue bonds for the construction and operation of a system for the distribution of natural gas. That the Cooperative is not a true non-profit cooperative association formed and operated without profit for the use and benefit only of its members. That it is not a separate entity from the City of Idaho Falls, but, as shown by its Articles of Incorporation and By-Laws and by the franchise in question, it is an arm or instrumentality of the City of Idaho Falls, controlled and brought into being by the City for the purpose of constructing and operating a system for the distribution of gas and the issuance of bonds for financing the same whereby the City is attempting to do indirectly what it is not permitted to do directly.

The second group of challenges to the franchise is directed against the City. It is contended: That the City was obligated to grant a franchise to the Intermountain Gas Company, the holder of the certificate of convenience and necessity. That the City is not empowered to construct and operate a system for the distribution of gas. That the City cannot issue bonds for the construction of such a system. That the City cannot issue bonds for the construction of such a system without first submitting the question to a vote of the electors and providing for an annual tax to retire same. That the City cannot grant an exclusive

franchise. That the City cannot grant a franchise for a private use of its streets and alleys. That the amount equal to three per-cent of the gross receipts to be paid to the City under the franchise is a revenue rais-ing measure and not a regulatory measure under the police power. That the actions of the City amount to the incurring of an indebtedness and assumption of a liability, contrary to the constitution, in excess of the current annual revenues of the City without a vote of the qualified electors and without provision for an annual tax to retire the same. That it is an extension of the faith and credit of the City contrary to the con-stitution. And that the City is attempting to do indirectly what it cannot do directly, that is, to construct and operate a system for the distribution of gas and to issue bonds in payment therefor, by creating an instrumentality or agency of the City for such purposes.

We do not deem it necessary, expedient or practicable to discuss and determine all such questions. Some of such questions are hypothetical, some premature and some based upon an interpretation of the consti-tution and statutes. We will only discuss and consider those questions which we deem necessary to a disposition of this cause.

Article VIII, Section 3, of our Constitu-tion provides:

"Limitations on county and munici-pal indebtedness.—No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the in-come and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebted-ness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void; provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

Article XII, Section 4, of the Constitu-tion provides as follows:

"Municipal corporations not to loan credit.—No county, town, city, or other municipal corporation, by vote of its citizens or otherwise, shall ever become a stockholder in any joint stock com-pany, corporation or association what-ever, or raise money for, or make dona-tion or loan its credit to, or in aid of, any such company or association: pro-vided, that cities and towns may con-

tract indebtedness for school, water, sanitary and illuminating purposes: provided, that any city or town contracting such indebtedness shall own its just proportion of the property thus created and receive from any income arising therefrom, its proportion to the whole amount so invested."

Sections 50–2801 to 50–2811, I.C., inclusive, dealing with municipal bonds, do not provide for the issuance of municipal bonds for the construction and operation of a system for the distribution of gas. Likewise, Sections 50–2812 to 50–2825, I.C., inclusive, containing the Revenue Bond Act, do not authorize the issuance of such bonds for the construction and operation of a gas distribution system.

In I Dillon, Municipal Corporations, (5th Ed.), paragraph 237, it is stated:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the

courts against the corporation, and the power is denied."

Neither the constitution nor statutes of this state expressly grant to municipalities the right to construct, operate and maintain a gas distribution system; or to issue bonds in payment for the construction thereof.

The contemplated system to be constructed by the Cooperative for the distribution of gas in the City of Idaho Falls provides for the laying of a pipeline from Pocatello to Idaho Falls for a distance of approximately fifty miles. It is conceded that the City of Idaho Falls does not have sufficient funds and annual revenues to pay for the construction of such a system.

The Cooperative was organized by five residents of the City of Idaho Falls as an ostensible non-profit cooperative association under the provisions of Chapter 10, Title 30, I.C. Thereafter, on March 2, 1956, the gas franchise ordinance in question was adopted and approved by the City of Idaho Falls. Such ordinance provides for the execution and filing of a contract by the Cooperative. Such contract was filed on March 16, 1956. Under date of March 6, 1956, the Cooperative entered into an agreement with R. E. Schweser & Company, a co-partnership, for the purchase by the co-partnership of bonds to be issued by the Cooperative to raise funds to construct its distribution system, such

bonds to be a first lien upon all its property and revenues. On June 20, 1956, a service agreement was entered into between the Pacific Northwest Pipeline Corporation and the Cooperative for the sale by the pipeline company of natural gas from its pipeline near Pocatello to the Cooperative for resale and distribution to its customers.

The Articles of Incorporation of the Cooperative, among other provisions, contains the following:

"Article II

"Purposes and Powers

"The objects and purposes for which this Association is formed are as follows:

\* \* \* \* \* \*

"3. To promote the common good and general welfare of the said City and, as gas consumers, the members of this Association, and also the inhabitants and commercial and other enterprises of said City and the surrounding territories, by providing, as hereinbefore described, adequate gas supplies for the use of such inhabitants and commercial and other enterprises.

\* \* \* \* \* \*

"5. To apply all receipts and revenues (except for patronage refunds made as contemplated by Article IV hereof) from such operations toward the cost of operating and maintaining and making additions and extensions to such properties and facilities and for the purpose of paying the principal of and interest on any indebtedness of this Association, with all the business and affairs of this Association to be conducted (notwithstanding any other powers herein or by applicable law granted) for the primary purpose of ultimately vesting in the said City, all right, title and interest of this Association in or to all of its properties and assets (subject only to any liens, charges or encumbrances that may then exist thereon and also subject to any rights or claims of any creditors of this Association), in order that the said City may acquire such properties and assets either without any consideration on its part or upon such other basis as may be mutually agreed upon by this Association and the said City; provided that, without limiting the generality of the foregoing:

\* \* \* \* \* \*

"(b) whenever (at any time after this Association shall have initially issued any indebtedness which shall constitute either indebtedness for borrowed money or indebtedness secured by any lien upon all·or substantially all of its properties and assets) this Association shall (otherwise than in connection with any refunding or refinancing program of this Association) have fully

322

paid all of its indebtedness other than current operating liabilities, this Association shall (in the manner and upon such conditions as may mutually be agreed upon by the said City and this Association) effect a transfer to the said City of all of the properties and assets of this Association, subject to any liens, charges or encumbrances which may then exist thereon and also subject to any then existing rights of any creditors of this Association.

"6. To conduct the business and affairs of this Association so that no profit or income from the operation thereof shall inure to any member of this Association and no distribution shall ever be made of any of the properties or assets of this Association to any member thereof (except for patronage refunds made as contemplated by Article IV hereof).

\* \* \* \* \* \*

"Article V

"Members

"Any person, firm, corporation or other legal entity desiring to receive gas service within the territorial limits served by this Association shall be eligible to membership upon such terms and conditions as shall, in accordance with applicable law, be prescribed by the By-Laws or by resolution of the Board of Directors of this Associa-

tion; provided that, upon the incorporation of this Association becoming effective, the hereinbelow subscribed incorporators of this Association shall thereupon become and (subject to any so prescribed membership terms and conditions) continue to be members of this Association.

\* \* \* \* \* \*

"Article VII

"Directors

\* \* \* \* \* \*

"Section 2. Election and Qualifications. The members of the Board of Directors shall be elected and may be removed in such manner (subject to the provisions of any applicable law) as may then be prescribed by the By-Laws of this Association; provided, however, that members of the Board of Directors shall (if and to the extent a sufficient number of such persons are willing and able to act as such members) be elected only from among those persons approved by resolution adopted by the council of the said City (or whatever authority may at the time be the comparable governing body of the said City) as candidates for such election, \* \* \*."

The contract provided for by the franchise ordinance and executed by the Cooperative in accordance therewith, contains, among other things, the following:

"For and in consideration of the foregoing, the undersigned, for itself, its successors and assigns, hereby covenants and agrees that:

"1. As the primary consideration for the said franchise rights and privileges, whenever either of the following events shall occur:

"(a) all indebtedness of the undersigned (except for current operating liabilities) shall be paid or satisfied in full; or

"(b) the undersigned shall lose all or substantially all of its properties and assets through the enforcement of any rights or remedies by any creditor of the undersigned;

"the undersigned shall convey, transfer and assign to your City (or to any instrumentality of your City as you may designate for such purpose) all right, title and interest of the undersigned in and to all of its then existing properties and assets, subject to any liens, charges or encumbrances which may then exist thereon and also subject to any then existing rights of any creditors of the undersigned; * * *."

An examination of the Articles of Incorporation and By-Laws of the Cooperative shows that its members are to be all applicants for the purchase of gas within its territory. There is no membership fee to be paid. There are no burdens to be assumed by its members other than would be assumed by the purchasers of gas from a public service corporation. In effect, the Cooperative does not have control of its membership.

██ The Articles of Incorporation or By-Laws do not state that it is to serve only its members. It is required to serve anyone within its territory making application for gas, that is, it is required to serve the public. It was not created for the purpose of serving only its members as distinguished from the public. The service of its members only is one of the distinguishing characteristics of a non-profit cooperative association, and was so recognized in Sutton v. Hunziker, 75 Idaho 395, 272 P.2d 1012, and Clearwater Power Co. v. Washington Water Power Co., 78 Idaho 150, 299 P.2d 484.

The By-Laws of the Cooperative provide that the members shall never at any time own an interest in the Cooperative or its property. In the event of dissolution of the Cooperative, its property and assets vest in the City. The City is at all times the equitable owner of the property and assets of the Cooperative.

The Board of Directors of the Cooperative must consist, under the By-Laws, of members approved by the City of Idaho Falls. Under this arrangement the City has control of the Cooperative.

Section 6 of the ordinance provides as follows:

"Section 6. Municipality shall have access at all reasonable hours to all Grantee's plans, contracts and engineering, accounting, financial, statistical, member and service records relating to the property and operation of Grantee."

Section 9 of the ordinance is as follows:

"Section 9. Consistent with its interest in the gas system and the operation thereof, Municipality agrees that its legal, engineering and other branches of city government will cooperate with Grantee for the benefit of the inhabitants of Municipality."

In addition to an amount equal to three percent of the gross revenues to be paid to the City, the Cooperative in thirty years time contemplates making a profit for the City consisting of the entire system and assets of the Cooperative. The Cooperative under the contract agrees that it will endeavor to establish and maintain rates and charges for the use of the gas which will bring in sufficient revenue to operate the proposed distribution system and to pay off the Cooperative's bonds issued to secure finance to construct and operate same by the end of the 30-year period of the franchise.

From the foregoing, it appears that the Cooperative is not a true non-profit cooperative association, but is an instrumentality of and controlled by the City of Idaho Falls. Considered as a separate entity from the City, the Cooperative has the attributes of a public service corporation subject to regulation by the Public Utilities Commission.

In Garkane Power Co. v. Public Service Commission, 98 Utah 466, 100 P.2d 571, at page 573, 132 A.L.R. 1490, in discussing a non-profit cooperative association, the Utah Court said:

"But the Public Service Commission points out that membership in Garkane is easy to obtain and that actually the Corporation solicits membership and has apparently accepted thus far all who paid their fee and agreed to pay the monthly minimum. This does not affect the relationship of the Corporation with its members nor does it change the character of the service to be rendered. The distinction between a public service corporation and a cooperative is a qualitative one. In a cooperative the principle of mutuality of ownership among all users is substituted for the conflicting interests that dominate the owner vendor—non owner vendee relationship. In a cooperative all sell to each. The owner is both seller and buyer.

So long as a cooperative serves only its owner-members and so long as it has the right to select those who become members, ordinarily it matters not that 5 or 1000 people are members or that a few or all the people in a given area are accorded membership, provided the arrangement is a bona fide cooperative or private service organization and is not a device prepared and operated to evade or circumvent the law. The courts will always scrutinize closely to determine whether or not a certain organization or method of conduct has for its purpose evasion of the law, and where it finds such evasion will declare such organization to be what it truly is."

■ Courts will pierce the corporate veil and look behind the form of organization to determine the true character of an organization and will disregard corporate form and consider substance rather than form. Packard Clothes, Inc., v. Director of Division of Employment Security, 316 Mass. 329, 61 N.E.2d 528; Royal Jewelers Co. of Knoxville v. Hake, 185 Tenn. 254, 205 S.W.2d 963; Appeal of MacKenzie Auto Equipment Co., 71 Idaho 362, 232 P.2d 130.

■ A plan to evade and circumvent the constitutional limitation on the creation of debt is not valid merely because the bonds representing the debt are declared not to be the obligations of the municipality. Hardin v. Owensboro Educational Ass'n, 244 Ky. 390, 50 S.W.2d 968; State ex rel. Public Institutional Building Authority v. Griffith, 135 Ohio St. 604, 22 N.E.2d 200; Reynolds v. City of Waterville, 92 Me. 292, 42 A. 553; City and County of San Francisco v. Boyle, 195 Cal. 426, 233 P. 965.

"Contrary to popular opinion, mere schemes to evade law, once their true character is established, are impotent for the purpose intended. Courts sweep them aside as so much rubbish." Davis v. People, 79 Colo. 642, 247 P. 801, at page 802.

What cannot be done directly by the City of Idaho Falls because of constitutional limitations cannot be accomplished indirectly. That which the constitution directly prohibits may not be done by indirection through a plan or instrumentality attempting to evade the constitutional prohibition. Atkinson v. Board of Commissioners, 18 Idaho 282, 108 P. 1046, 28 L.R.A.,N.S., 412; Macallen Co. v. Commonwealth of Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874.

In Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643, 43 L.R.A.,N.S., 1095, this court discussed at length the limitations and prohibitions contained in Article VIII, Section 3, of our Constitu-

326

tion. The court points out the many ways that an indebtedness or liability incurred by the municipality may infringe upon the constitutional prohibition. In discussing the issuance of bonds for the purchase of a water works system, such bonds to be paid out of a special fund provided by the revenues from the water works system, this court said, 23 Idaho 32, at pages 49-50, 129 P. 643, at page 649, 43 L.R.A.,N.S., 1095:

> "The courts, to whose decisions we have above referred, have indulged in various subtleties and refinements of reasoning to show that no *debt* or *indebtedness* is incurred where a municipality buys certain property, and specifically provides that no liability shall be incurred on the part of the city, but that the property shall be paid for out of a *special fund* to be raised from the income and revenue from such property. The reasoning, however, of those cases utterly fails when applied to our Constitution, for the reason that none of those cases deals with the word 'liability,' which is used in our Constitution, and which is a much more sweeping and comprehensive term than the word 'indebtedness'; nor are the words 'in any manner or for any purpose' given any special attention by the courts in the foregoing cases. The framers of our Constitution were not content to say

that no city shall incur any indebtedness 'in any manner or for any purpose,' but they rather preferred to say that no city shall incur any *indebtedness or liability* in any manner, or for any purpose. It must be clear to the ordinary mind, on reading this language, that the framers of the Constitution meant to cover all kinds and character of debts and obligations for which a city may become bound, and to preclude circuitous and evasive methods of incurring debts and obligations to be met by the city or its inhabitants."

In Miller v. City of Buhl, 48 Idaho 668, 284 P. 843, 72 A.L.R. 682, we held that city could not incur obligation for purchase of an electric generating system to be paid for from receipts from sale of power and light without complying with Article VIII, Section 3, of the Constitution. To the same effect, see Straughan v. City of Coeur d'Alene, 53 Idaho 494, 24 P.2d 321; General Hospital v. City of Grangeville, 69 Idaho 6, 201 P.2d 750; Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475; Boise-Payette Lumber Co. v. Challis Independent School District No. 1, 46 Idaho 403, 268 P. 26; Boise Development Co., Ltd. v. Boise City, 26 Idaho 347, 143 P. 531.

■ The creation of the Cooperative, its contracts for the purchase of gas and

for the sale of its bonds to raise funds for the construction, operation and maintenance of a gas distribution system and the ordinance of the City of Idaho Falls granting an exclusive franchise for thirty years to the Cooperative with the contract provided for by such ordinance are all parts of a plan and design devised to enable the City of Idaho Falls to evade and circumvent the limitations and prohibitions of the constitution and statutes; and to exercise powers not granted to a municipality. The purpose of the whole plan is to allow the City to do indirectly what it cannot do directly, that is, to construct, operate and maintain a system for the distribution of gas; and to pay for same by the creation of indebtedness and liabilities in excess of its revenues for the current year without a vote of the qualified electors and without providing for an annual tax to retire such indebtedness.

We agree that the record is in accord with the statement in the brief of appellant that the officials of the City of Idaho Falls and the officials of the Idaho Falls Cooperative Gas Association, Inc., were at all times acting in what they thought was the best interest of the community and that they were sincere in all of their actions. There is nothing in the record challenging their good faith in their endeavor to provide a system for the distribution of gas for the City of Idaho Falls and vicinity.

We are not concerned with the merits or demerits of so-called "home rule" by municipalities whereby the law would empower a municipality to construct, operate and maintain its own system of distribution of gas as compared with a system for distribution of gas constructed, maintained and operated by a public utility holding a certificate of convenience and necessity. Such question is strictly a matter of policy for the people or the legislature and is not for consideration by the courts. This court is only concerned with the interpretation of the constitution and statutes as it finds them and the application of same to the facts before the court.

We must hold that the franchise in question granted by the City of Idaho Falls to the Idaho Falls Cooperative Gas Association, Inc., is illegal, void and of no effect. The judgment of the trial court is reversed and the cause remanded to the trial court with instructions to vacate such judgment and to enter a judgment in favor of appellant in accordance with the views expressed in this opinion. Costs to appellant.

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.