## Sirloin Saloon of Shelburne, Rutland, and Manchester, Inc. v. Department of Employment and Training

[558 A.2d 226]

No. 88-036

Present: **Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed February 10, 1989

*Fred I. Parker and Alison J. Bell of Langrock Sperry Parker & Wool*, Burlington, for Plaintiffs-Appellants.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Dooley, J.** Sirloin Saloon, Inc., Sirloin Saloon of Rutland, Inc., Sirloin Saloon of Manchester, Inc., and Sirloin Saloon of Shelburne, Inc. (collectively appellants) appeal a decision of the Employment Security Board denying the latter three corporations the status of successors of the former corporation for the purpose

of determining the rate of contribution they must make to the Vermont Unemployment Compensation fund for the period January 1, 1987 to June 30, 1987. We affirm.

The facts of this case are largely undisputed. Prior to January 1, 1987, Sirloin Saloon, Inc. owned and operated three restaurants, one each in Manchester, Vermont, Rutland, Vermont, and Shelburne, Vermont. As of the new year, Sirloin Saloon, Inc. reorganized its corporate structure and formed three wholly-owned corporations, one for each restaurant. These corporate entities were named Sirloin Saloon of Manchester, Inc., Sirloin Saloon of Rutland, Inc., and Sirloin Saloon of Shelburne, Inc..

The purpose of the tax free reorganization was to insulate each entity from liability incurred at other business locations. Before it reorganized, Sirloin Saloon, Inc. employed 126 people. After reorganization, Sirloin Saloon, Inc., retained eight employees and the remaining employees were distributed among the three newly created corporate entities. The record does not reveal how many employees went to each corporate subsidiary. Each new subsidiary acquired the assets used in its own operation. Each corporation acquired its own federal tax identification number and is responsible for the wages of its employees. Sirloin Saloon, Inc. owns all of the stock of each new corporation. No relevant change occurred in the management practices or the staff of each restaurant.

The Unemployment Compensation fund contribution rate of employers is based on their experience in having Unemployment Compensation claims made against them in the past. See 21 V.S.A. § 1326. The parent corporation, Sirloin Saloon, Inc., had a relatively good experience (that is, few claims) before it reorganized. Thus, the Department of Employment and Training (the Department) assigned it a contribution rate of 2.1 percent of taxable payroll for 1987. On June 1, 1987, Sirloin Saloon, Inc. filed Notice of Change informing the Department of the transfer of each restaurant to the appropriate subsidiary. Each corporation sought the experience rating, and the resulting low contribution rate, of the parent on the basis that they were simply carrying on the parent's business without change. On June 5, 1987, the Department notified each of the successor corporations that they could not use the parent's experience rating and would be treated as new employers as if they were just starting in business. Pursuant to 21 V.S.A. § 1324, the Department assigned to each of the successors the new employer rate of contribution of 4.8 percent.

Each subsidiary corporation appealed to a referee and prevailed. However, the Department sought further review by the Employment Security Board (the Board), which reversed the referee.

The Unemployment Compensation Law, in order to provide a fund from which claims can be paid, taxes employers based on a portion of wages paid in each calendar year, 21 V.S.A. §§ 1321(a), (b), 1301(6) (1981), and on the basis of a benefit experience ratio computed by the Commissioner. 21 V.S.A. § 1326(a). The benefit experience ratio is the quotient of the total benefits charged to the employer over a three-year period divided by the total of the taxable payroll for that same period. *Id.* The philosophy behind the tax scheme is that employers who cause the need for compensation by terminating workers should pay more taxes than those who do not cause such need. Thus, the higher the benefit experience ratio of an employer, the higher will be the tax rate for that employer. There is, of course, no way to implement this scheme for a new employer who has no claims history. The new employer is assigned a rate that is the average for the industry of which the new employer is a part. *Id.* § 1324.

The statute creates an exception to the general rule of assigning an average rate to a new employer. That exception is contained in 21 V.S.A. § 1325(b) and applies to a "successor" corporation. The statute provides:

> (b) Any individual or employing unit who in any manner succeeds to or acquires the organization, trade or business or substantially all of the assets of any employer, except any assets retained by the employer incident to the liquidation of his or her obligations, and who thereafter continues the acquired business shall be considered to be a successor to the predecessor from whom the business was acquired and, if not already an employer before the acquisition, shall become an employer on the date of the acquisition. The commissioner shall transfer the experience-rating record of the predecessor employer to the successor employer. If the successor was not an employer before the date of acquisition, his or her rate of contribution for the remainder of the rate year shall be the rate applicable to the predecessor employers with respect to the period immediately preceding the date of acquisition if there was only one predecessor or there

> were only predecessors with identical rates. If the predecessors' rates were not identical, the commissioner shall determine a rate based on the combined experience of all the predecessor employers. If the successor was an employer before the date of acquisition, the contribution rate which was assigned to the successor for the rate year in which the acquisition occurred will remain assigned to the successor for the remainder of the rate year, after which the experience-rating record of the predecessor shall be combined with the experience-rating of the successor to form the single employer experience-rating record of the successor.

Thus, a successor corporation under § 1325(b) receives the experience-rating record of the predecessor and, if there is only one predecessor, the contribution rate..

The issue in this case is whether § 1325(b) applies to these facts. Appellants argue that the three new corporations are each successors under § 1325(b) to Sirloin Saloon, Inc. and are entitled to its experience-rating record and contribution rate. The Department argues that each of the new corporations is a partial successor and partial successors don't qualify under the statute.

The issue before the Court is purely one of statutory construction. In construing a statute, our primary task is to give effect to the intent of the Legislature. *State* v. *Yudichak*, 147 Vt. 418, 420, 519 A.2d 1150, 1151 (1986). In interpreting a statute, we first look to the plain, ordinary meaning of the statute to discern the legislative intent. *Id.* If plain on its face, the statute must be enforced according to its terms and there is no need to construe the statute. *Paquette* v. *Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985); *In re 66 North Main Street*, 145 Vt. 1, 3, 481 A.2d 1053, 1055 (1984). If the meaning of the statute is in doubt, we will next consider the whole statutory scheme, " 'the effects and consequences, and the reason and spirit of the law,' " *Langrock* v. *Department of Taxes*, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980) (quoting *Holbrook Grocery Co.* v. *Commissioner of Taxes*, 115 Vt. 275, 278-79, 57 A.2d 118, 120 (1948)). In construing ambiguities in taxing statutes, we resolve doubts against the taxing power and in favor of the taxpayer. See *id.*

The Board found that the statute in this case is plain on its face and that its plain meaning rejects the appellants' position. The Board concluded that only a "full successor" meets the re-

quirements of § 1325(b). The Board relied on the opening language of (b) which requires that the new employing unit succeed to or acquire "the organization, trade or business" of the predecessor or "substantially all of the assets" of the predecessor. In the Board's view, the transfer here did not meet the statutory wording in two respects: (1) No one of the new corporations obtained "the organization, trade or business" of Sirloin Saloon, Inc. or substantially all of its assets; (2) the predecessor remains in business so there can be no "transfer" since the predecessor will continue to use its experience-rating record.

Appellants argue that the Board misread 21 V.S.A. § 1325(b) and that the plain language of the statute requires that Sirloin Saloon, Inc.'s experience-rating record be transferred to the new corporations under the circumstances present in this case. As an alternative, appellants argue that the statute is ambiguous and we should look to its underlying policy to guide our interpretation. Once we do so, appellants contend that the Department's reading of the statute defeats the underlying purpose of the statute, is contrary to another jurisdiction's interpretation of similar law, and it is essentially unfair. We first consider appellants' argument that the plain meaning of the statute supports its position.

Appellants focus on the same statutory language as the Board but emphasize two parts not emphasized by the Board. First, they emphasize that the last clause that describes what must be transferred — "substantially all of the assets of . . . [the] employer" — is clearly an alternative so that if the new corporations fit within another alternative, the extent of asset transfer is irrelevant. From this analysis, appellants urge that we conclude that the Board's distinction between full successors (transfer of experience-rating record allowed) and partial successors (transfer of experience-rating record not allowed) is spurious. In support of this argument, appellants note that the definition of employer contains a subdivision specifically describing an "employer" which acquires only part of a predecessor employer. See 21 V.S.A. § 1301(5)(F). Second, appellants emphasize that the language allows the transfer of a "business" and that term directly fits this circumstance. Thus, appellants argue that each new corporation received the "business" of the predecessor at that location.

We agree with both the appellants and the Department that the meaning of § 1325(b) is plain. The Board correctly determined that meaning in holding that an experience-rating record

can not be transferred to a partial successor. When we read the disputed clause in its entirety and in context, see *State v. Jarvis*, 146 Vt. 636, 637-38, 509 A.2d 1005, 1006 (1986), we believe that it sets forth alternative descriptions of the requisite transfer, but in each case there must be a total transfer, or nearly total transfer, of the predecessor employer's business activities or assets. By using the word "transfer," the language does not cover a situation where, as here, the predecessor remains in business and also wants to retain its experience-rating record after the transfer. While the definition of employer may cover both partial and total transfers as appellants argue, that definition does not help in construing the experience-rating record transfer policy. The definition of employer is clearly intended to be broad to extend coverage to all unemployed workers. That policy is wholly separate from the determination of the employer's tax liability.

We have reviewed the decisions from jurisdictions with statutes similar to ours. The majority of these decisions reach the same result as we have reached for similar reasons. In *Community Feed Stores, Inc. v. Director of Division of Employment Security*, 391 Mass. 488, 462 N.E.2d 105 (1984), the Supreme Judicial Court of Massachusetts ruled on a situation where a father and son were partners in operating two separate stores in different towns. The father and son formed separate corporations and transferred control of each store to the newly formed corporations. The applicable statute allowed a successor owner to assume the experience rating of the predecessor when acquiring "the entire organization, trade or business or substantially all the assets thereof." 391 Mass. at 489, 462 N.E.2d at 106. The Massachusetts court held the statute prohibited the transfer of the experience rating under the circumstances. See also *Williams v. Tracy Builders, Inc.*, 94 Ga. App. 203, 94 S.E.2d 139 (1956); *Canada Dry Bottling Co. v. Board of Review*, 118 Utah 619, 223 P.2d 586 (1950); *Burlington Truck Lines, Inc. v. Iowa Employment Security Comm'n*, 239 Iowa 752, 32 N.W.2d 792 (1948).

Appellants have pointed to a line of Idaho cases which reached a contrary result. See *In re Okay Shopping Center, Inc.*, 77 Idaho 524, 296 P.2d 1031 (1956); *In re MacKenzie Auto Equipment Co.*, 71 Idaho 362, 232 P.2d 130 (1951). The earlier of these cases, *MacKenzie Auto Equipment*, reached the result appellants seek in the absence of any statute on transfer of an experience rating. In *Okay Shopping Center*, the legislature had adopted a statute

similar to ours, and the department argued that it presented the exclusive means of transferring an experience-rating record. The court disagreed, holding that the legislature had not intended to prevent the partial transfer method allowed in *MacKenzie Auto Equipment*, 77 Idaho at 527, 296 P.2d at 1032. We find *Okay Shopping Center* inapplicable to our situation because we have no prestatute policy on transfer of an experience-rating record. The Idaho cases are no help to appellants in this case.

Although we hold the plain meaning of the statute prevents us from adopting appellants' position, we have considered appellants' policy arguments. Appellants argue that the result we reach is unfair and wholly inconsistent with the statutory purpose because the four corporations existing after the reorganization are, in all respects, equal to the one corporation that existed prior to reorganization. Appellants can see no justification for increasing their aggregate tax liability when the organizational change was one of form not substance for purposes of the unemployment compensation program.

■ The short answer to appellants' argument is that the policy issue is for the Legislature, not this Court, where as here the statute is plain on its face. See *Littlefield* v. *Department of Employment & Training*, 145 Vt. 247, 257, 487 A.2d 507, 512 (1984) (Court is not at liberty to read into the statute provisions that the Legislature did not see fit to incorporate); *Riddel* v. *Department of Employment Security*, 140 Vt. 82, 88, 436 A.2d 1086, 1089 (1981) (where statute is clear but its provisions seem unjust, remedy is for the Legislature to change the statute). While the Legislature could have decided to allow for a transfer of an experience-rating record in cases like this, its failure to do so is not so irrational that we must bend the statute to adopt the result that appellants seek. The current statute promotes certainty and administrative efficiency. While the facts in this case may clearly show that the sum of the new parts is equal to the former whole in all relevant respects, other partial succession cases may put the Department in an extensive and difficult process of line drawing that the Legislature may want to avoid. Moreover, the transfer of an experience-rating record in cases such as this creates a fiction since none of the new corporations is likely to have had an experience equal to the average for all of them. In any event, we are

dealing here with only a starting point from which each corporation will move as it develops its own experience-rating record.

*Affirmed.*