(724 P.2d 690)
No. 58,155

MANPOWER, INC., OF WICHITA, *Appellee*, v. STATE OF KANSAS EM-
PLOYMENT SECURITY BOARD OF REVIEW and JOHN SUTTON, *Ap-
pellants*.

Petition for review denied September 19, 1986.

Opinion filed
July 17, 1986.

*Marlin White* and *Shannon Krysl*, of Topeka, for appellant Employment
Security Board of Review.

*Orval J. Kaufman*, of Kaufman, Bonwell, Foster & Irby, of Wichita, for the
appellee.

Before PARKS, P.J., RICHARD A. MEDLEY, District Judge, assigned,
and ROBERT L. BISHOP, District Judge, assigned.

BISHOP, J.: The State of Kansas Employment Security Board of
Review appeals from a district court order overruling the board's
decision that the employer experience rating of Manpower, Inc.,
of Wichita (Manpower) should be charged a pro rata share of
employment benefits paid a former employee.

The case was tried on a stipulation of facts which covered the
following matters:

The business of Manpower is furnishing to its customers
temporary, emergency, and part-time employees. Requests for
temporary help received by Manpower from its customers vary
from a minimum of four hours to a fixed period of longer dura-
tion. The workers are employees of Manpower in all respects,
rather than employees of the customers; Manpower is liable for
unemployment insurance tax on such employees; and, in the
circumstances prescribed by statute, it is a last employer, a base
period employer, or both, depending upon the particular facts of
a claim for unemployment benefits.

The claimant in this matter, John Sutton, made application for

employment with Manpower on February 18, 1981. As part of the employment procedure, he executed an application which set forth these conditions of employment:

"I understand that I am not required to wait at this office for a work assignment, that I may feel free to report here if I so desire, that my pay starts when I report to Manpower's customer ready for work, that I am not required to return to this office at the end of a work assignment, that I may mail in my time slip when my work assignment is completed for the week. If I do not contact the Manpower office after completing an assignment, Manpower Inc. may assume that I am no longer ready, willing, or able or otherwise available for work."

At the same time, Sutton executed an Employee's Withholding Allowance Certificate, Form W-4, and was furnished certain written information explaining work requirements, job assignment procedures, company policies, and procedure for payment of work completed for Manpower customers.

Between February 18 and March 26, 1981, Sutton was assigned to five different customers of Manpower. Sutton's assignments to Manpower customers varied in length from one day to several days. It is stipulated that Sutton worked "various intermittent" days, so there were days when he did not work for Manpower customers.

On his last day, March 26, 1981, Sutton worked a full day for a Manpower customer. Thereafter, he did not report to Manpower for assignment. On March 27, 1981, Manpower had available work assignments for eight different customers, and if Sutton had reported for work on that day, he would have received an assignment for work comparable to that he had been performing, at comparable pay. Further, Manpower had assignments available on subsequent days.

Other facts established by the record are that a statement of Manpower policies was given to Sutton upon his employment which stated as follows:

"While we are a temporary help service, we are interested in hiring qualified people on a long-term basis. Some of our assignments are short, some are long. If you want to work and meet our requirements, we will attempt to provide you with 40 hours work per week."

Manpower paid the employer's share of the social security tax and paid the cost of workers' compensation insurance for its employees.

On October 11, 1981, having subsequently worked for other employers, Sutton filed a claim for unemployment compensa-

tion, which was approved, and a charge was made to Manpower's experience rating account based upon Manpower's liability as a base period employer. Manpower duly appealed the board examiner's decision that its experience rating account should be charged, and on November 10, 1982, a board referee upheld the examiner's decision, reasoning that:

"Work assignments at various locations with different employers cannot be construed as continuous employment, but are different periods of employment. Each time an assignment is completed by an employee, he is laid off due to lack of work until a new assignment is accepted.

"The referee concludes that claimant was laid off due to lack of work. Therefore, the employer's experience rating account is charged."

On December 21, 1982, on review by the full board, the findings of facts and decision of the referee were adopted and her decision affirmed. On January 7, 1983, Manpower brought this action in the district court for review of the board's decision.

The issue is neatly framed by the finding of the referee. The board contends that at the completion of each assignment for a customer of Manpower, claimant Sutton was separated from Manpower for the reason that his "service assignment" had ended. The position of Manpower is that Sutton left work voluntarily without good cause attributable to his employment when he failed to report on the next day or subsequent days when comparable employment at comparable pay was available to him as an employee of Manpower.

Before reviewing the pertinent statutes, reference should be made to the history of the litigation in Sedgwick County of this same issue between the same parties. In 1973, Manpower and the board litigated the identical issue presented here on facts different in no material respect from the facts of this case. (*Manpower, Inc., of Wichita v. State of Kansas Employment Security Board of Review*, Case No. C-27571, District Court of Sedgwick County, Kansas). The employee in the 1973 case worked a period of time on the date he made application with Manpower and for a different customer of Manpower on the succeeding day. Five days later, he worked seven hours for another Manpower customer. On the next succeeding day the claimant did not report to Manpower for a work assignment. The evidence was that if claimant had so reported, a work assignment would have been available for him. The determination by the board was the same in the 1973 case as in this, and Manpower

appealed to the district court the charge to its experience rating as a base period employer. The case was heard before The Honorable Tom Raum of the District Court of Sedgwick County, and on September 28, 1973, Judge Raum entered judgment for Manpower, concluding that under the law the employer-employee relationship was continuous in nature and ceased when the employee was terminated for cause pursuant to the terms of the employment contract. It was found as a matter of law that completion of a given work assignment did not result in the termination of the employer-employee relationship. The court ruled that, where an employee of Manpower failed to report to Manpower for a further work assignment and later accepted other employment upon termination of which he was entitled to unemployment compensation benefits, with respect to Manpower the employee was deemed to have terminated his most recent employment with Manpower without good cause attributable to his employment.

That 1973 decision established the *modus vivendi* between Manpower and the board with respect to employees of Manpower who failed to report when work assignments were available until the ruling of the examiner which initiated this case. As Manpower points out, there has been no change in the pertinent statutes and no appellate decisions requiring a different construction than that adopted by Judge Raum.

Under the Employment Security Law unemployment benefits for a qualified claimant are paid from a fund to which employers subject to the law contribute. The method of computation of those contributions is set forth in K.S.A. 1985 Supp. 44-710a. A separate account is maintained by the Secretary of Human Resources to which the contributions of each contributing employer are credited, and benefits are charged against the account of each base period employer ratably as provided by statute. There are exceptions, however, to charges against the account of a base period employer and these are detailed in K.S.A. 1985 Supp. 44-710(c)(2)(A). It is provided there that:

"Benefits paid in benefit years established by valid new claims shall not be charged to the account of a contributing . . . base period employer if the examiner finds that claimant was separated from the claimant's most recent employment with such employer under any of the following conditions: . . . (iii) leaving work voluntarily without good cause attributable to the claimant's employment."

The trial court found, as Judge Raum had earlier, that when the claimant, Sutton, failed to report and request an assignment on the day next succeeding the last day he worked, a work assignment being then available, his action fell within the condition of the statute relieving Manpower from a charge to its experience rating account.

The board cites the definitions of employment and unemployment from the definitions provision (K.S.A. 1985 Supp. 44-703) of the Employment Security Law and argues that Sutton was separated from Manpower after March 26, 1981, because no service was performed. The argument begs the question, because what must be determined under K.S.A. 1985 Supp. 44-710(c)(2)(A)(iii) is whether Sutton left work voluntarily without good cause attributable to his employment. It is not in question that no service was performed after that date.

The board complains of the construction by the trial court of K.S.A. 1985 Supp. 44-706, which deals with disqualification of an individual for employment benefits. That section provides:

"An individual shall be disqualified for benefits:

"(a) If the individual left work voluntarily without good cause attributable to the work or the employer, subject to the other provisions of this subsection (a)."

This last provision, except as it shows generally the scheme and purpose of the Employment Security Law, is not pertinent to the issues of this appeal, as the board admits in its brief. The question here is whether or not the experience rating account of Manpower shall be charged and not whether claimant Sutton is entitled to benefits.

In considering the question of claimant leaving the employment of Manpower voluntarily or involuntarily, it must be kept in mind that claimant was the employee of Manpower and not of the Manpower customers seeking temporary employees. Claimant accepted, and contracted for, work assignments as the employee of Manpower when they might be available, but that did not mean that when one work assignment was completed he had to make application to become an employee of Manpower for a new assignment. Availability of work assignments could obviously be sporadic, but that is not the same thing as completion of one job and rehiring for another.

The board cites authority from another jurisdiction (*Denver Post v. Dept. of Labor and Emp.*, 610 P.2d 1075 [Colo. 1980]), to

the effect that substitute employees are unemployed when their period of substitution ends. That circumstance is hardly analogous to a situation in which the employee's employment ends when he fails to report. Both parties cite the preamble to the Employment Security Law (K.S.A. 44-702) affirming that "involuntary" unemployment is a subject of general interest and concern, drawing different conclusions from their emphasis on "involuntary." The board cites *Southwestern Bell Tel. Co. v. Employment Security Board of Review*, 210 Kan. 403, 502 P.2d 645 (1972), and *Pickman v. Weltmer*, 191 Kan. 543, 382 P.2d 298 (1963), in support of the general proposition that the unemployment provisions should be liberally construed to effectuate the purpose of providing benefits for those whom the law seeks to assist, but those cases provide no guidance here beyond that. The question is simply the intent of the legislature as expressed in the statute (K.S.A. 1985 Supp. 44-710[c][2][A]) and whether the employment arrangement between Manpower and Sutton can rationally be construed as terminating each time Sutton completed a work assignment.

The board makes the argument that Manpower attempts to insulate itself from liability for unemployment contributions by the provision of the application for employment in which a Manpower employee acknowledges that if he does not contact Manpower after completing an assignment, it may assume that he is no longer ready, willing, or able, or otherwise available for work. In its brief before the trial court, the board argued that construction of the application to create a continuing employer-employee relationship despite day-to-day changes in job assignments would result in a determination that the employee left work voluntarily without good cause attributable to the employment at any time the employee did not have an assignment except in one instance. That would be if the employee contacted the employer and there was no work assignment available. This is, no doubt, the effect of treating an employee of Manpower who fails to report as indicating an unwillingness to work for reasons not attributable to his employment and not based upon good cause. It is, however, fully consistent with the express provisions of the statute. The failure of an employee to appear for work without good cause when work was available would exempt an employer from a charge to its experience rating account in any

circumstances, regardless of whether the employer's business was furnishing temporary help to customers or furnishing labor services in any other manner. Counsel for Manpower stated in oral argument that when no work was available for a reporting employee, no exemption under the statute was claimed by Manpower. That would be the logical consequence of a construction that the application of the exemption arises when the employer has work available and the claimant chooses, for no work-related cause, not to work.

Manpower draws an analogy to the situation of a plumbing or electrical firm whose employees perform various work assignments for various customers. Manpower's argument is that it could not be successfully argued that an employee of the plumbing firm or electrical firm was terminated for lack of work until he reported to the next customer location. The analogy is apt and the employee of the plumbing firm or electrical firm would be no more a temporary employee than an employee of Manpower. The confusion arises when Manpower's employees are considered as temporary employees of Manpower rather than employees of Manpower providing temporary labor for Manpower's customers.

The applicable statutory provision is not ambiguous and thus requires no search for legislative intent beyond the words used.

"A primary rule for the construction of a statute is to find the legislative intent from the language, and where the language used is plain and unambiguous and also appropriate to an obvious purpose the court should follow the intent as expressed in the words used." *State v. V.F.W. Post No. 3722*, 215 Kan. 693, 695, 527 P.2d 1020 (1974).

The claimant became an employee of Manpower without a guarantee of 40 hours per week but with the understanding that work would be available, upon a satisfactory record of performance, so long as there were customers for Manpower's services. Claimant had the option of not reporting, but he had also the opportunity to work when there was demand for Manpower's particular services. In those circumstances, the employment agreement was continuing at claimant's option, as is the case with most employment calling for unskilled or semiskilled labor. To say that completion of a work assignment amounted to a severance of employment for a job-related reason ignores the practical consequences of the construction. It would make as much sense to say that if Manpower had a customer request for

four days of work to which claimant was assigned and claimant should fail to report on the third day, he would become unemployed for a reason attributable to his employment because no services would be furnished until he reported further. To reason otherwise is to say that the critical factor is the customer of Manpower for whom the services are performed. To hold that if a work assignment for one Manpower customer is completed at 5:00 p.m. on one day, the Manpower employee performing the work is severed from employment at that time, when he might begin an assignment for another customer at 8:00 a.m. on the following day except for his unwillingness to work, while if the work on the second day is for the same customer there is no severance, is to treat the employee of Manpower as the employee of the customer, quite contrary to the intent of all parties. "Statutes must be construed with reason, considering the practicalities of the subject matter addressed." *Anderson v. Overland Park Credit Union*, 231 Kan. 97, Syl. ¶ 5, 643 P.2d 120 (1982).

Finally, the decision of Judge Raum in the earlier case involving the same parties, nearly indistinguishable facts, and an identical question of law is entitled to consideration. In her opinion, the referee in this case remarked that the ruling of Judge Raum was only persuasive and not binding upon her. Even if the decision in the prior case has only persuasive effect, the conclusions of law on which the prior decision is based have behind them the force of logic and reason and the interpretation of the statute according to its plainly expressed intent.

The trial court was correct in determining that completion of one working assignment did not amount to termination of the claimant's employment. Failure to report for a work assignment when such assignments were available amounted to leaving work voluntarily without good cause, a separation under a condition in which the law provides benefits paid shall not be charged to the account of the base period employer.

The judgment is affirmed.