(890 P.2d 1233)

No. 71,226
71,389

KANSAS CITY, KANSAS, UNIFIED SCHOOL DISTRICT NO. 500, *Appellee*, v. AUDRA K. WOMACK and YOLANDA J. STEWART, *Defendants*, and KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW, *Appellant*.

KANSAS CITY, KANSAS, UNIFIED SCHOOL DISTRICT NO. 500, *Appellee*, v. MARY K. BRYANT, *Defendant*, and KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW, *Appellant*.

Opinion filed March 3, 1995.

*James R. McEntire,* of Topeka, for appellant Kansas Employment Security Board of Review.

*Deryl W. Wynn* and *James R. Goheen*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee Kansas City, Kansas Unified School District No. 500.

Before RULON, P.J., BRAZIL and ROYSE, JJ.

RULON, J.: The Kansas Employment Security Board of Review (KESB) appeals the district court's judgment that Kansas City, Kansas, Unified School District No. 500's (U.S.D. 500) experience rating account should not be charged because the claimants were not unemployed and, therefore, not eligible for unemployment benefits.

We must decide if the district court: (1) had jurisdiction to consider this matter and, (2) if the district court did have such jurisdiction, whether the court erred in reaching its judgment. We affirm.

Audra K. Womack, Yolanda J. Stewart, and Mary K. Bryant (claimants), were all employed by U.S.D. 500 on a part-time basis. Womack was employed as a substitute teacher; Steward was a substitute paraprofessional; and Bryant was a substitute secretary, substitute teacher's aide, and substitute paraprofessional.

All three claimants filed applications for unemployment benefits. Subsequently, U.S.D. 500 was notified that its experience rating account could be charged for a portion of the claimants' unemployment benefits. U.S.D. 500 requested the examiner to reconsider the rating charges pursuant to K.S.A. 44-710(c)(2)(F)(iii). In all three cases the examiner issued "Reconsidered Base Period Employer Determination[s]," stating that the appropriate pro rata share of benefits paid would be charged to U.S.D. 500's rating account. Two of the determinations stated that the claimants' most recent employment with U.S.D. 500 was ended due to a reduction in work force and said the determinations were made pursuant to K.S.A. 44-710(c). The determination for Stewart found that each time she was called in to substitute was a separate period of employment and she was laid off due to lack of work. Her failure to accept a new assignment did not alter the reason for her separation from work.

U.S.D. 500 appealed the examiner's decisions pursuant to K.S.A. 44-709(b)(3) and K.S.A. 44-709(c). Hearings were held in

all three cases, with one referee hearing the Stewart and Womack cases and another referee hearing the Bryant case. The referees noted that under Kansas law, benefits would not be charged to a base period employer's account if the claimant was discharged for misconduct connected with the claimant's work or if the claimant left work voluntarily without good cause attributable to the claimant's work or employer.

In the Stewart and Womack cases, the referee noted that substitute teachers are not qualified for benefits if the unemployment falls between two successive academic terms when the claimant performed services in the first term and had reasonable assurance that he or she would be employed for the second term. The referee found that Womack and Stewart had been temporarily laid off because no work was available and had "left work voluntarily with good cause attributable to the work and the employer." In the Bryant case, the referee ruled that because there was no evidence she was discharged for misconduct or left work voluntarily without good cause, the employer's account should be charged. The referees affirmed the examiners' decisions in all three cases.

U.S.D. 500 appealed the referees' decisions to KESB pursuant to K.S.A. 44-709(c). KESB affirmed the referees' decisions in all three cases.

U.S.D. 500 next appealed KESB's decisions to the district court pursuant to K.S.A. 44-709(i). In the Womack and Stewart cases, the court ruled that the agency had misinterpreted the law and U.S.D. 500's rating account should not be charged because the claimants were not unemployed at the time they sought benefits. In Bryant's case, the court found that U.S.D. 500's rating account should not be charged because Bryant was employed by an educational institution and was not entitled to benefits between terms since she had a reasonable assurance she would be employed by U.S.D. 500 the following term.

KESB then perfected this appeal.

## Standard of Review

KESB first argues the district court should not have decided whether the claimants were eligible for benefits because the only

issue decided by the referees was whether U.S.D. 500's rating account should be charged for its pro rata share of any benefits paid to the claimants. U.S.D. 500 contends that if the claimants are not entitled to benefits, then the issue of whether U.S.D. 500's rating account should be charged is moot. Further, U.S.D. 500 argues that the referee discussed the claimant's eligibility to receive benefits in the Womack and Stewart cases and heard testimony concerning eligibility in the Bryant case. Consequently, U.S.D. 500 argues that the matter was properly before the referee and the district court, despite the referee's apparent attempt to limit the scope of review.

The record shows that U.S.D. 500, in response to the notification of potential charge, noted that the claimants had not been terminated and that work was available. The records of all three cases show that U.S.D. 500 presented testimony to the referees indicating the claimants were either still employed or had not left their employment because of lack of work for any reason associated with the school district. However, the referees limited the scope of their decision to whether U.S.D. 500's account should be charged.

In the Womack case, the referee's decision found there was work available to the claimant at the time she filed for benefits but concluded she had been separated from her employment due to a reduction in work force "when work was not continuously available during the school term." In the Stewart case, the referee found that the claimant was not offered continuous work but did receive offers for work on a sporadic basis. The referee further found that "although the claimant may be disqualified for benefits for refusing a suitable offer of employment the fundamental question is whether the claimant was unemployed through no fault of her own." Finally, in the Bryant case, the referee found that the claimant had not been discharged for misconduct and had not left work voluntarily; there was simply no work for her during the summer session.

Generally, a party cannot raise an issue to the district court which has not been raised at the administrative level unless the issue falls within the provisions of K.S.A. 77-617. See *State ex rel.*

*Smith v. Miller*, 239 Kan. 187, 190, 718 P.2d 1298 (1986). However, the record indicates that while the referee sought to limit the scope of the decision, U.S.D. 500 did raise the issue and present evidence sufficient to justify review. Neither party cites any regulation, statute, or case law which would require the scope of the examiner's or the referee's decision to be limited to the question of whether the employer's experience rating account should be charged. Consequently, we conclude we have jurisdiction to determine this cause on the merits.

### The Charging of U.S.D. 500's Account

Next, we must decide if the district court erred in finding U.S.D. 500's account should not be charged for the pro rata share of the claimants' unemployment benefits.

Because the resolution of this issue involves the interpretation of Kansas employment security law, a review of the relevant statutory framework is helpful.

K.S.A. 44-702 reads in relevant part:

"As a guide to interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity, due to unemployment, is a serious menace to health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life."

K.S.A. 44-705 reads in relevant part:

"[A]n unemployed individual shall be eligible to receive benefits with respect to any week only if the secretary, or a person or persons designated by the secretary, finds that:

"(a) The claimant has registered for work at and thereafter continued to report at an employment office . . . .

"(b) The claimant has made a claim for benefits with respect to such week . . . .

"(c) The claimant is able to perform the duties of such claimant's customary occupation or duties of other occupations for which the claimant is reasonably fitted by training or experience, and is available for work . . . .

"(d) The claimant has been unemployed for a waiting period of one week . . . within the benefit year which included the week for which the claimant is claiming benefits."

K.S.A. 44-703(m) states that a person is deemed

" 'unemployed' with respect to any week during which such individual performs no services and with respect to which no wages are payable to such individual, or with respect to any week of less than full-time work if the wages payable to such individual with respect to such week are less than such individual's weekly benefit amount."

K.S.A. 44-706 reads in relevant part:

"An individual shall be disqualified for benefits:

"(a) If the individual left work voluntarily without good cause attributable to the work or the employer, subject to the other provisions of this subsection (a). . . .

. . . .

"(b) If the individual has been discharged for misconduct connected with the individual's work. . . .

. . . .

"(i) For any week of unemployment on the basis of service in an instructional, research or principal administrative capacity for an educational institution as defined in subsection (v) of K.S.A. 44-703 . . ., if such week begins during the period between two successive academic years or terms or, . . . if the individual performs such services in the first of such academic years or terms and there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

"(j) For any week of unemployment on the basis of service in any capacity other than service in an instructional, research, or administrative capacity in an educational institution, as defined in subsection (v) of K.S.A. 44-703 . . ., if such week begins during the period between two successive academic years or terms if the individual performs such services in the first of such academic years or terms and there is a reasonable assurance that the individual will perform such services in the second of such academic years or terms . . . ."

K.S.A. 44-703(v) reads in relevant part:

" 'Educational institution' means any institution of higher education . . . or any institution, except private for profit institutions, in which participants, trainees or students are offered an organized course of study or training designed to transfer to them knowledge, skills, information, doctrines, attitudes or abilities from, by or under the guidance of an instructor or teacher and which is approved, licensed or issued a permit to operate as a school by the state department of education or other government agency . . . ."

Pursuant to K.S.A. 44-710, employer contributions shall accrue and become payable by each contributing employer for each cal-

endar year that the employer is subject to the employment security law with respect to wages paid for employment.

"Benefits paid in benefit years established by valid new claims shall not be charged to the account of a contributing employer or rated governmental employer who is a base period employer if the examiner finds that the claimant was separated from the claimant's most recent employment with such employer under any of the following conditions: (i) Discharged for misconduct or gross misconduct connected with the individual's work; or (ii) leaving work voluntarily without good cause attributable to the claimant's work or the employer." K.S.A. 44-710(c)(2)(A).

"Where base period wage credits of a contributing employer or rated governmental employer represent part-time employment and the claimant continues in that part-time employment with the employer during the period for which benefits are paid, then that employers' account shall not be charged with any part of the benefits paid if the employer provides the secretary with the information as required by rules and regulations. For the purposes of this subsection (c)(2)(B), 'part-time employment' means any employment when an individual works concurrently for two or more employers and also works less than full-time for at least one of those employers because the individual's services are not required for the customary, scheduled full-time hours prevailing at the work place or the individual does not customarily work the regularly scheduled full-time hours due to personal choice or circumstances." K.S.A. 44-710(c)(2)(B).

The ruling of an administrative agency on questions of law, while not conclusive, is nonetheless persuasive and is given weight, and may carry with it a strong presumption of correctness, especially if the agency is one of special competence and experience. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 246, 834 P.2d 368 (1992). However, the final construction of a statute rests with the courts. *National Collegiate Realty Corp. v. Board of Johnson County Comm'rs*, 236 Kan. 394, 404, 690 P.2d 1366 (1984).

" '[T]he legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' [Citation omitted.]

. . . .

" 'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*.' " *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992).

### Womack & Stewart

In Womack's and Stewart's cases, the district court ruled that the claimants were not entitled to benefits because they were not unemployed. The court reversed the administrative agency's determination that U.S.D. 500's account should be charged because the agency had erroneously interpreted or applied the law.

In *Mogren v. State Employment Security Bd. of Review*, 15 Kan. App. 2d 12, 14, 801 P.2d 64 (1990), this court, interpreting 44-706(i), noted that a vast majority of jurisdictions had concluded that substitute teachers, with a written or oral agreement to provide substitute services during the upcoming fall term, were not eligible to receive unemployment compensation during the summer months. Based on this conclusion, we are satisfied a logical inference could be drawn that if a substitute teacher is either unemployed during the school term or unemployed during the period between terms with no reasonable assurance of work the following term, he or she would be eligible for unemployment benefits.

Clearly, if Womack or Stewart applied for benefits for the period between two successive school terms when they had a reasonable assurance of continued employment the following term, they would not be qualified to receive benefits pursuant to K.S.A. 44-706(i). If so, because claimants would be disqualified, U.S.D. 500's experience rating account could not be charged. The question in this case is whether U.S.D. 500's account should be charged for the days that the claimant substitute teachers did not work during the school term when those claimants continue to be carried on the school district's list of teachers approved for substitute work.

We believe this case is closely analogous to *Manpower, Inc. v. Kansas Employment Security Bd. of Review*, 11 Kan. App. 2d 382, 724 P.2d 690, *rev. denied* 240 Kan. 804 (1986). In *Manpower*, this court considered the issue of whether a temporary employment service's experience rating account should be charged when an employee, who had applied for unemployment benefits, had failed to report to Manpower for further work after completion of a prior assignment.

Interestingly, in *Manpower*, the referee found that assignment to various locations with different customer/employers could not be construed as continuous employment but were different periods of employment and, therefore, each time an assignment was completed, the Manpower employee was laid off of work until a new assignment was accepted. 11 Kan. App. 2d at 384. In the present case, specifically the Stewart case, the referee found that each assignment as a substitute was a separate term of employment and each time the assignment ended, the substitute teacher was laid off for lack of work. According to the referee, the substitute's failure or refusal to accept a new assignment did not alter the reason for separation.

This court noted that the Manpower employees accepted employment without a guarantee of 40 hours a week of work, but with the understanding that work would be available. We held that, in the case of a temporary employment agency, completion of one work assignment did not amount to a termination of the claimant's employment and that failure to report for further work assignments when such assignments were available constituted voluntarily leaving work without good cause. 11 Kan. App. 2d at 388-89.

The situation of the part-time substitute teacher and the employees of a firm like Manpower are almost identical. The claimant substitute teachers accepted employment with U.S.D. 500 with full knowledge that full-time work was not available but that work would be available on a sporadic basis. Both parties agree that substitute teachers' names are kept on a list and the teachers are contacted on a rotating basis. The record shows that at the time all three claimants applied for benefits, their names were still on the substitute teachers list and work was available. The record also shows that both Womack and Stewart refused some assignments offered to them. Womack continued to work for the school district as a substitute for a short period after she filed for benefits. Stewart was still considered by U.S.D. 500 to be one of their substitutes on the day of the hearing before the referee.

Another case which is closely analogous is *McCall Pattern Co. v. Kansas Employment Security Bd. of Review*, 238 Kan. 608, 712

P.2d 1266 (1986). In *McCall*, certain permanent part-time employees filed for unemployment benefits for a period of two months in which there was no work. The McCall employees were hired to work 8 to 10 days each month except in May and November of each year. The fact that no regular work would be available during those two months was disclosed to the employees at hiring. The employees could sign up for extra work which was available on a sporadic basis. At no time during the year was there a termination of the employer-employee relationship. 238 Kan. at 610-11.

In *McCall*, our Supreme Court affirmed the district court's decision that the claimants were not entitled to benefits because they were not unemployed. The court found that because the claimants remained employees of McCall throughout the calendar year; had regular work hours; were eligible for unscheduled work during May and November; and were fully aware of the idiosyncrasies of their employment when they accepted the job, they were not involuntarily unemployed as contemplated by the Kansas employment security law. 238 Kan. at 612-13.

In the present case, all the claimants were employed by U.S.D. 500 for the entire school year, both fall and spring terms. Work was made available to them on a rotating basis, and they were free to accept or refuse any assignment without fear of being terminated. Each claimant was aware of the nature of their employment at the time of acceptance. None of the claimants' positions on the substitute teachers list had been terminated at the time they applied for benefits. It is true that, unlike the McCall employees, the substitute teachers did not receive benefits as did full-time teachers; however, like the McCall employees, the substitute teachers are not involuntarily unemployed within the meaning of the Kansas employment security law.

Here, the district court also relied on *Palm Beach Cty. Sch. Bd. v. Unempl. App. Com'n*, 504 So. 2d 505 (Fla. Dist. App. 1987) (*Palm Beach I*). In *Palm Beach I*, a substitute teacher was initially found to be unemployed by the agency based on a finding that each day the substitute worked constituted an employment period and she would be entitled to benefits in any week in which she

earned less than her weekly benefit amount as calculated by the statutory formula. The school district appealed the agency's decision. It was undisputed that substitute teachers had no obligation to work if called and were not promised any particular number of calls in a given period. Each teacher's name was placed on a list and he or she was contacted for work on a rotating basis. The teachers were not regular employees of the school district and received no benefits. In *Palm Beach I*, the claimant's name had not been removed from the list, nor had she been terminated. She was found to have substituted for the district the day before the unemployment review hearing. 504 So. 2d at 507.

The *Palm Beach I* court ruled that the claimant was not unemployed as contemplated by the Florida unemployment statute and found that the unemployment compensation law was not designed to provide coverage to substitute workers who are called in from time to time as the need arises. The agency's decision was reversed, and the case was remanded with instructions that the claims be denied. 504 So. 2d at 507-08.

The Florida unemployment statute construed in the *Palm Beach I* case (see Fla. Stat. § 443:036[32][a] [1994 Supp.]) defined "unemployed" in terms of totally or partially unemployed. The wording of the Kansas definition of "unemployed" is identical except for the use of the terms "totally unemployed" and "partially unemployed." 504 So. 2d at 507.

KESB cites several authorities from other states for its position that the claimants are entitled to benefits and that U.S.D. 500's account is properly chargeable. In *Cleveland City Schools v. Conn*, 703 S.W.2d 164 (Tenn. App. 1985), the court found that a substitute teacher was unemployed and eligible for benefits when the teacher had been used on a regular basis but had not been contacted for work for some time. *Cleveland* is distinguishable from the instant case in that the substitute teacher was told it was doubtful he would be used because of his lack of certification.

Another case cited by KESB is *Agsalud v. Blalack*, 67 Hawaii 588, 699 P.2d 17 (1985). That case is not relevant because it holds that a full-time United Airlines employee who is laid off subject

to recall is eligible for unemployment benefits. The mere fact that the employee could be recalled did not mean that the employer-employee relationship was continued. Similarly, in *Palm Beach Sch. Bd. v. Unemp. App. Com'n*, 576 So. 2d 362 (Fla. Dist. App. 1991) (*Palm Beach II*), the Florida court distinguished the earlier *Palm Beach I* case when it concluded that a full-time computer sales clerk who had been laid off, then accepted substitute teaching work and found other full-time employment and was again laid off, was eligible for unemployment benefits from the full-time job despite the fact she was still substitute teaching. She was not seeking benefits because the school was not giving her enough assignments, but was seeking unemployment benefits for loss of her full-time employment. Neither case is instructive in the instant set of circumstances.

One case cited by KESB which is analogous is *Claim of Curto*, 132 App. Div. 2d 751, 517 N.Y.S.2d 107 (1987). In that case a soccer coach employed by Siena College was hired to coach a season which lasted from August to November, depending on the team's performance. After the season was over, he applied for and was granted unemployment benefits for the remainder of the school year despite the fact he had accepted the college's offer of coaching employment for the following year. The New York court interpreted the statute strictly and concluded that because the period for which benefits were sought was not in between school terms and because nothing in the statute otherwise disqualified the coach, he was entitled to benefits.

The New York court's interpretation does support KESB's position and appears irreconcilable with the prior decisions of Kansas courts in *McCall* and *Manpower*.

U.S.D. 500 also cites cases from other jurisdictions supporting its view. In *Employment Com'n v. Southside School D.*, 775 S.W.2d 733 (Tex. App. 1989), the Texas court interpreted the term "unemployed" for purposes of the Texas unemployment compensation act. There, the court concluded that an on-call substitute teacher, who had no expectation of further employment from the school district until receiving a call for assignment and who was not required to accept all assignments, was not unemployed for the periods between assignments.

"[W]e conclude that the term unemployed, for the purposes of the Texas Unemployment Compensation Act, means that the employer-employee relationship is terminated. It does not include instances in which the employee is merely idle during the existence of the employment relationship.

"[T]o hold otherwise would be an absurdity, which would open the door to mischief and abuse of the statute, contrary to the intent of the legislature." 775 S.W.2d at 735.

Another case cited by U.S.D. 500 is *Des Moines Ind. Comm. v. Dept. of Job Service*, 376 N.W.2d 605 (Iowa 1985). In *Des Moines* a substitute teacher worked for several school districts in the area. At the conclusion of the 1982-83 academic year, the school district sent a letter indicating the district would have substitute work available to him in the following term. According to school policy, it sends two such letters requesting confirmation that the teacher would be available. If the teacher does not respond after the second letter, the school assumes the teacher is no longer available. 376 N.W.2d at 607. The substitute teacher in that case did not respond to the letters and moved to a different town. He subsequently filed for unemployment benefits.

On appeal from the agency's determination that the substitute teacher was entitled to benefits, the Iowa Supreme Court ruled that the substitute teacher who had failed to report as being available for work in response to the district's letters had voluntarily quit without good cause attributable to his work. He simply moved for his own financial reasons and did not wish to commute, and was therefore not entitled to benefits. 376 N.W.2d at 612. The court noted:

" 'Substitute teaching is by its nature inherently indefinite depending as it does on the occurrence of unforeseen vacancies in the teaching faculty; however, the employment possibilities of a substitute teacher remains reasonably assured so long as the claimant intends to do the work and the district expects to offer the work as it becomes available.' *Guth v. Unemployment Compensation Board of Review*, 81 Pa. Cmwlth. 79, 473 A.2d 228, 231 (1984)." 376 N.W.2d at 609.

We are satisfied the district court here was correct when it found that neither Womack nor Stewart were unemployed as contemplated by Kansas employment security law. In *Clark v. Board of Review Employment Security Division*, 187 Kan. 695, 698, 359 P.2d 856 (1961), our Supreme Court interpreted G.S. 1949, 44-

701 *et seq.*, the predecessor to K.S.A. 44-701, *et seq.* as establishing a public policy to protect against "involuntary unemployment." The language in K.S.A. 44-701 *et seq.* suggests this policy continues. However, a person must necessarily be unemployed to be entitled to the benefits conferred by statute and based on the Kansas appellate courts' interpretation of "unemployment" as established in *McCall* and *Manpower*, neither Womack nor Stewart were unemployed. The finding that a substitute teacher's employment begins and ends with each assignment is analogous to, and is as untenable as, the premise that was rejected in *Manpower*.

### Bryant

Although the analysis above is relevant, Bryant's case presents slightly different facts. The record shows that Bryant filed for unemployment benefits during the period between school terms in 1993. She was subsequently called back to work in August 1993, when the fall semester began. Bryant testified that she knew she would be reemployed at the beginning of the school year, so there was no question but that she had reasonable assurance of being employed in the fall term.

The record shows that on July 12, 1993, the agency sent a notice of potential charge to U.S.D. 500 with a benefits year begins (BYB) date of July 4, 1993. Next on July 14, 1993, U.S.D. 500 mailed an examiner's determination with a BYB date of July 4, stating that the claimant's wage credits from an educational institution were removed pursuant to K.S.A. 44-706. Then on July 19, 1993, U.S.D. 500 was mailed an examiner's reconsidered base period employer determination saying that a pro rata share of benefits paid on Bryant's claim would be charged to its account. Finally, on July 22, 1993, the agency mailed the school district an examiner's determination saying Bryant was disqualified for benefits because she worked for an educational institution, the period of unemployment occurred between semesters, and she was reasonably assured of employment the following term. The referee's decision states, "There was simply no work for the claimant for that summer session."

We are uncertain if Bryant is receiving, or ever has received, any benefits.

K.S.A. 44-706, as interpreted by *Mogren v. State Employment Security Bd. of Review*, 15 Kan. App. 2d 12, 801 P.2d 64 (1990), is clear that substitute teachers are not eligible to receive unemployment compensation for the period between academic terms if they worked for the school district the previous term and have a reasonable assurance of performing such services in the following term. In the instant case KESB does not dispute that Bryant was not eligible for unemployment benefits for the summer of 1993; however, it claims U.S.D. 500's account should be charged for any benefits due Bryant for the term or terms prior to the end of the spring 1993 school term. As we understand, KESB's position is that it may determine if the employer's account is chargeable prior to or separate from determining if the claimant is eligible for benefits. However, until a claimant is determined to be unemployed and eligible pursuant to K.S.A. 44-705 and not disqualified for any of the reasons in K.S.A. 44-706, it is realistically impossible to make a determination of whether the employer's account may be charged pursuant to K.S.A. 44-710. The district court's judgment found there must be a valid entitlement to benefits prior to making the determination that the employer's account should be charged. We agree.

Each substitute teaching assignment does not constitute a separate term of employment, and a substitute teacher is not deemed terminated or laid off at the conclusion of each assignment if there is a reasonable assurance the substitute will continue to be contacted for further assignments during the school year.

In summary, a substitute teacher is not unemployed as contemplated by the Kansas employment security law for days during the school year which he or she does not work when the teacher's name remains on the school district's list of approved substitute teachers and there is reasonable assurance he or she will be called to work during the school year. Under the facts of this case, because the claimants had reasonable assurance they would continue to be contacted for teaching assignments during the year and had no indication their names had been removed from the list of ap-

proved substitute teachers, they were not unemployed as contemplated by the Kansas employment security law.

Affirmed.