2005 VT 31

### In re LOYAL ORDER OF MOOSE, INC., Lodge #1090

[872 A.2d 345]

No. 04-112

¶ 1. March 15, 2005. Employer Loyal Order of Moose, Inc., Lodge #1090, appeals pro se from the Employment Security Board's decision charging its experience-rating record with a share of unemployment benefits paid to one of its employees. The Board found that employer provided employee with irregular, as-needed, employment, and it "terminated" her after each assignment. The Board thus concluded that employer was not entitled to the benefit of 21 V.S.A. § 1325(f)(3), which provides that the experience-rating record of a base-period employer shall not be charged if an individual's employment with that employer

has not been terminated or reduced in hours. We conclude that the Board misinterpreted 21 V.S.A. § 1325(f)(3), and we therefore reverse.

¶ 2. Employer hired employee in 2001 to work as a part-time waitress and bartender on an as-needed basis. The employee subsequently obtained a full-time position elsewhere, but continued to work for employer Moose as well. In February 2003, the employee left her full-time job, and applied for unemployment benefits. Because employer Moose was a base-period employer for employee, it was asked to complete a "Request for Separation Information" form. On the form, employer indicated that it continued to employ employee, her hours had not been reduced, and she worked as a "spare — when needed — no hours committed." In March 2003, the Department of Employment and Training notified employer that it would be charged for a portion of the employee's unemployment compensation benefits. Employer requested a hearing, and after a hearing, an appeals referee concluded that employer had reduced the employee's hours, and thus, its experience-rating record was properly charged for its share of benefits paid to employee.

¶ 3. Employer appealed to the Employment Security Board. After a hearing, the Board affirmed the referee's decision, concluding that employer should be charged because it was not entitled to the benefit of 21 V.S.A. § 1325(f)(3), which exempts the charge where "the individual's employment with that employer had not been terminated or reduced in hours." The Board found that employer contacted its employee when it needed a spare waitress or bartender, and at the end of each assignment, there was no guarantee that employer would contact the employee again. Absent a regular schedule, the Board reasoned, the parties' employment relationship did not continue beyond each

specific assignment, and the relationship was more accurately described as a termination or layoff after each assignment. The Board concluded that 21 V.S.A. § 1325(f)(3) was intended to provide relief to employers who continued to employ individuals on the same, regular, consistent basis as they had before the individuals separated from other employers; it did not provide relief to employers, such as employer Moose, who provided irregular, on call, as-needed, employment. The Board thus upheld the referee's decision charging employer's experience-rating record for a portion of the unemployment benefits paid to employee. Employer appealed.

¶ 4. On appeal, employer argues that the Board erred in concluding that it was not entitled to the benefit of 21 V.S.A. § 1325(f)(3). Employer asserts that it did not terminate employee, nor did it reduce her hours; rather, employee's work schedule has remained steady, and her employment schedule is consistent with the purpose for which she was hired — as an "as-needed" employee. Employer argues that the Board erroneously concluded that employee was "terminated" after each assignment because she was, and continues to be, an active employee.

¶ 5. On review, we will uphold the Board's decision unless it can be demonstrated that its findings and conclusions are erroneous. *Trombley v. Dep't of Employment & Training*, 146 Vt. 332, 334, 503 A.2d 537, 539 (1985). Absent a compelling indication of error, we defer to the Board's interpretation of a statute that it is charged with executing. *Sec'y, Agency of Natural Res. v. Upper Valley Reg'l Landfill Corp.*, 167 Vt. 228, 238, 705 A.2d 1001, 1007 (1997). As discussed below, we conclude that the Board erred in charging employer's experience-rating record for a share of employee's unemployment benefits because employer was plainly entitled to the benefit of 21 V.S.A. § 1325(f)(3).

¶ 6. Unemployment legislation is designed to remove economic disabilities and distress that results from involuntary unemployment, and assist those workers who become jobless for reasons beyond their control. *Adams v. Dep't of Employment Sec.*, 139 Vt. 413, 414, 430 A.2d 446, 447 (1981). Employers bear the financial burden of accomplishing these goals because they are generally in a better position than individual workers to bear a share of the economic cost, and because penalty assessments may tend to prevent casual layoff decisions. *Hunt v. Dep't of Employment Sec.*, 142 Vt. 90, 92, 453 A.2d 391, 392 (1982). To provide a fund for unemployment compensation claims, employers are taxed based on a portion of wages paid in each calendar year, and on the basis of a benefit experience ratio computed by the Commissioner. 21 V.S.A. §§ 1321(a), (b), 1326(a). The benefit experience ratio is the quotient of the total benefits charged to the employer over a three-year period divided by the total of the taxable payroll for that same period. *Id.* § 1326(a). The ratio is structured so that "employers who cause the need for compensation by terminating workers should pay more taxes than those who do not cause such need." *Sirloin Saloon v. Dep't of Employment & Training*, 151 Vt. 123, 125, 558 A.2d 226, 227 (1989).

¶ 7. Normally, when an eligible individual receives unemployment benefits, the experience-rating record of each subject employer who provided base-period wages is charged its proportionate share. 21 V.S.A. § 1325(f). The experience-rating record of a base-period employer is not charged, however, if "as of the date on which the individual filed an initial claim for benefits, the individual's employment with that employer had not been terminated or reduced in hours." *Id.* § 1325(f)(3). The Board concluded that 21 V.S.A. § 1325(f)(3) applied only to employers who continued to employ individuals on the "same, regular, consistent basis" as they did before the individuals separated from other employers. The Board found that this did not include employer because it provided "irregular" employment to employee. We reject the Board's interpretation of 21 V.S.A. § 1325(f)(3) because it contravenes the statute's plain language, and it undermines the intent of the provision.

¶ 8. In construing a statute, our primary task is to give effect to the intent of the Legislature. *Sirloin Saloon*, 151 Vt. at 126, 558 A.2d at 228. When a statute is plain on its face, we enforce it according to its terms. *Id.* If the meaning is unclear, we consider the whole statutory scheme — the effects and consequences, and the reason and spirit of the law. *Id.* We resolve any ambiguities against the taxing power, and in favor of the taxpayer. *Id.* The plain language of 21 V.S.A. § 1325(f)(3) indicates its applicability to employer here. Employer neither "terminated" its employee, nor "reduced" her hours; it continued to employ her on the same "as-needed" basis as it had before she filed a claim for unemployment benefits.

¶ 9. The Kansas Court of Appeals addressed an analogous situation in *Manpower, Inc. v. State Employment Security Board of Review*, 724 P.2d 690 (Kan. Ct. App. 1986). In that case, employer provided customers with temporary, emergency, and part-time employees, and claimant worked in this capacity on "various intermittent" days for employer. *Id.* at 691. At some point, claimant did not report to employer for a new assignment, although employer had work available. After working for other employers, claimant filed a claim for unemployment compensation, and employer's experience-rating was charged based on its liability as a base-period employer. The board upheld the charge, explaining that work assignments at various locations with different employers could not be

construed as continuous employment, but instead constituted different periods of employment. According to the board, each time an assignment was completed by the employee, the employee was laid off due to lack of work until a new assignment was accepted.

¶ 10. The court rejected this position, and concluded that employer's experience-rating should not be charged because the employer-employee relationship was continuous in nature, and the completion of a given work assignment did not result in the termination of the employer-employee relationship. As the court explained, claimant accepted, and contracted for, work assignments as the employee of employer when they might be available, but that did not mean that when one work assignment was completed he had to make application to become an employee of employer for a new assignment. "Availability of work assignments could obviously be sporadic, but that is not the same thing as completion of one job and rehiring for another." *Id.* at 693. The court explained that claimant became an employee of employer without a guarantee of full-time employment but with the understanding that work would be available as long as there were customers for employer's services. Claimant had the option of not reporting for work, but he also had the opportunity to work when there was demand for employer's particular services. "In those circumstances," the court stated, "the employment agreement was continuing at claimant's option, as is the case with most employment calling for unskilled or semiskilled labor." *Id.* at 695.

¶ 11. Although the Kansas court's decision turned on the applicability of a different statutory provision than the one at issue in this appeal, we find its employment relationship analysis persuasive. As in that case, there is no support for a conclusion that employee here was terminated after each work assignment with employer. It simply does not follow that in the absence of a regular schedule an employer-employee relationship does not continue beyond each specific assignment. In this case, as in the case discussed above, the parties have a continuing employment relationship, dependent on the availability of work. Cf. *In re Platt,* 130 Vt. 329, 332, 292 A.2d 822, 824 (1972) (explaining that, in a nontechnical sense, claimant was not "unemployed" because he worked regularly for two weeks each month to carry out a specific task for the same employer and at the end of each assignment he was not "discharged," to be "reemployed" the following month; it was plain from the facts that the claimant had a "continuing part-time job" that he and his employer both expected him to perform each month); see also *Kansas City Unified Sch. Dist. No. 500 v. Womack,* 890 P.2d 1233, 1242 (Kan. Ct. App. 1995) (concluding that each substitute teaching assignment did not constitute separate term of employment, and substitute teacher not deemed terminated or laid off at conclusion of each assignment if there is reasonable assurance that substitute will continue to be contacted for further assignments during school year); *Town of Mattapoisett v. Dir. of Div. of Employment Sec.,* 466 N.E.2d 125, 127 (Mass. 1984) (stating that to characterize part-time employees, who were hired to work on an "as-needed" basis, as "partially unemployed" when both parties understood at the beginning of the employment relationship that the hours of employment were to be irregular and less than full time, is to torture the plain meaning of the term). We reject the Board's conclusion that the employee was "terminated" for purposes of 21 V.S.A. § 1325(f)(3) after each work assignment.

¶ 12. The legislative material provided by the Department indicates that 21 V.S.A. § 1325(f)(3) was designed to remedy the unfair practice of holding a part-

time employer responsible for a proportionate share of an employee's unemployment compensation benefits when that employer did nothing to cause the employee's partial unemployment. See Proposed Legislation Questionnaire, Kathleen C. Hoyt to Judith B. Stephany, November 18, 1988, at 1; see also *Weight Watchers, Inc. v. Sec'y of Human Res.*, 592 P.2d 887, 889 (Kan. 1979) (statutory provision providing exemption for employers who continue to provide employees with "regular part-time employment" designed to combat inequity of charging the experience-rating record of such employers). There is no suggestion that the Legislature considered the inequity any less for employers who continue to provide the same "on call" or "as-needed" employment as opposed to those who continue to provide so-called "regular" employment. Section 1325(f)(3) does not draw such a distinction, and the Board erred in reading this restriction into the statute. See *Gen. Teamsters Union Local No. 249 v. Commonwealth*, 459 A.2d 1363, 1364-65 (Pa. Commw. Ct. 1983) (statute providing that part-time employer's account "shall not be charged with compensation paid to an employee separated from his full-time work while the part-time work continues without material change" did not draw distinction between regular and irregular or sporadic, part-time work, and suggesting that it would be error to find that, because employees were not hired on a part-time regular basis and did not have a regular and specific work schedule, statute was inapplicable).

¶ 13. The Minnesota Supreme Court considered a similar issue in *Zoet v. Benson Hotel Corp.*, 274 N.W.2d 120 (Minn. 1978) (per curiam). In that case, the court concluded that an employer's experience-rating record should not be charged for unemployment compensation benefits paid to five banquet waitresses who continued to work for employer. Employees filed unemployment compensation claims for those periods in which they were not scheduled for work due to an insufficient number of banquets. The then-applicable law provided that an employer's experience-rating account would be charged unless the employees were part-time employees who continued to receive substantially equal part-time employment from their base-period employer. *Id.* at 121. The court rejected the argument that employer's experience-rating record should be charged because the employees were separated from their employment and, thus, they were not receiving substantially equal part-time employment from their base-period employer. As the court explained, this assertion ignored the reality of the parties' employment relationship because, even after filing for unemployment compensation benefits, the employees continued to work for employer on the same basis as before. *Id.*

¶ 14. In reaching its conclusion, the court noted that the state's employment security act was designed to encourage stable employment by raising the employer's contribution rate through charging its experience-rating account. The court stated that the sole question before it was whether this employer's account should be charged for the benefits paid to its employees when the unemployment was not attributable to the employer. "Fault," the court explained, "is a basic element to consider in interpreting the [Employment Security] Act." *Id.* at 122. The court found that, although employees worked less than they wanted, their unemployment was attributable to employer only to the extent that employer did not have sufficient business to schedule employees for the number of shifts that they sought. Thus, because the employer was not the cause of the employees' unemployment, the court found it inappropriate to charge its experience-rating account, and thus raise its contribution rate.

¶ 15. Although the Minnesota legislature later amended the statutory provision at issue to require that employers provide weekly part-time employment equal to at least ninety percent of the part-time employment provided in the base-period to avoid a charge to their experience-rating record, this does not undermine the basic principle underlying the court's decision. Indeed, the underlying sentiment was reiterated in *New London Nursing Home, Inc. v. Lindeman*, 382 N.W.2d 868, 871 (Minn. Ct. App. 1986). In that case, the court found that the revised statute, as applied, violated the equal protection rights of an employer who provided "stable," but not weekly, continuing employment to an employee. The court explained that it was unconstitutional to charge the experience-rating record of such an employer when the employee continued to work for employer on a stable basis, and the employee was collecting unemployment compensation benefits as a result of another employer's actions, and due to no fault of employer, when the same burden was not imposed under similar circumstances on an employer who provided weekly, part-time employment. *Id.*

¶ 16. It would be equally unfair, and contrary to the purposes underlying our unemployment statutes, to charge the experience-rating record of employer in this case. As noted above, the benefit experience ratio is designed so that those employers who have terminated employees pay more than those who have not terminated employees. Charging employer's account in this case would frustrate that purpose as employee continues to work for employer on the same basis as before she filed her claim for benefits. See *Am. Sec. & Trust Co. v. Dist. Unemployment Comp. Bd.*, 376 A.2d 824, 826 (D.C. 1977) (to implement legislative intent underlying unemployment compensation laws, unemployment compensation could be charged only against accounts of former employers, and not against accounts of continuing employers). Adopting the Board's interpretation would require employer to subsidize the full-time employer who actually laid off employee, when employer bears no responsibility for employee's unemployment. This is plainly unfair to employer, and it also serves to discourage employers from hiring part-time workers who have full-time employment elsewhere. See *id.* (voicing same policy concerns); see also *Bloomsburg Univ. of Penn. v. Unemployment Comp. Bd. of Review*, 692 A.2d 586, 590 n.7 (Pa. Commw. Ct. 1997) (noting that it would be unjust and absurd to require employer to pay full-time wages to employee, while concurrently paying a portion of employee's unemployment compensation benefits that arose from conduct of employee and/or another employer over which continuing remaining employer had no control, and stating that "[s]uch a liability could deter potential second employers from hiring anyone having an equal or better first job"). Because the Board's interpretation of 21 V.S.A. § 1325(f)(3) conflicts with both the plain language of the statute, and its underlying purpose, we reverse the Board's decision charging employer's experience-rating record for a share of employee's unemployment compensation benefits.

*Reversed.*